Filed 7/22/14  In re Randy L. CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| In re RANDY L., a Person Coming Under the Juvenile Court Law. | B251713 |
| | (Los Angeles County Super. Ct. No. CK64088) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent, | |
| v. | |
| ASTRID M., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Carlos Vazquez, Judge.  Affirmed.

Linda Rehm, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, and Jacklyn K. Louie, Principal Deputy County Counsel for Plaintiff and Respondent.

_____

Astrid M., the mother of Randy L. and David L., challenges the juvenile court's jurisdictional findings and dispositional orders concerning David L. and its decision not to return Randy L. to her custody. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Astrid M. has an extensive history of involvement with the Department of Children and Family Services (DCFS) that began long before the births of Randy L. and David L. The instant dependency proceedings commenced in October 2012 with respect to Randy L., who was then 2 months old, after an incident of domestic violence between Astrid M. and Randy's father, S.L. Randy L. was declared a dependent child of the court under Welfare and Institutions Code[1] section 300, subdivision (b), with allegations found true that the parents had a history of physical altercations, including the October 2012 incident in which S.L. struck Astrid M.'s head with his fists; and that S.L. had a substance abuse problem and was presently using methamphetamine. Randy L. was placed the home of his paternal grandmother.

David L. was born in July 2013, and he was immediately detained by DCFS, which filed a dependency petition alleging that David L. came within the jurisdiction of the juvenile court under section 300, subdivisions (a) and (b).

On September 11, 2013, the court held a six-month review hearing for Randy L. and the jurisdictional and dispositional hearing for David L. The court found that return of Randy L. to his parents would create a substantial risk of detriment to him. With respect to David L., DCFS asked the court to dismiss the initial allegations under section 300, subdivisions (a) and (b) and to amend the petition to assert three allegations under section 300, subdivision (j). The first allegation under section 300, subdivision (j) was that Astrid M. and S.L. had "a history of engaging in physical altercations. On 10/15/12, the father struck the mother's head with the father's hands. The mother had limited ability to protect the children. The child's siblings, Cesar [L.] . . . and Randy L[.] . . . are

---

[1] All further statutory references are to the Welfare and Institutions Code.

depend[e]nts of the Juvenile Court due to domestic violence between the mother and the father.  Such conduct on the part of the parents places the child at risk of harm."  Next, DCFS alleged that S.L. had a history of substance abuse and was a current user of methamphetamine.  S.L.'s substance abuse problems, DCFS asserted, were unresolved and limited his ability to provide care, protection, and support for David L. and placed David L. at risk of harm.  Finally, DCFS alleged that S.L. had an admitted history of mental and emotional problems, including a diagnosis of bipolar disorder and auditory hallucinations, which rendered him unable to care for David L. and placed David L. at risk of harm.  The juvenile court sustained all three allegations and found David L. to be a dependent child of the juvenile court under section 300, subdivision (j).  The court further found by clear and convincing evidence that substantial danger existed to David L. and that there was no reasonable means to protect him without removing him from the custody of his parents.

Astrid M. appeals one of the three jurisdictional findings concerning David L., the removal of David L. from her custody, and the failure to return Randy L. to her custody.

## DISCUSSION

### I.     David L.:  Challenge to Jurisdictional Finding

Astrid M. contends that there is insufficient evidence to support the finding that physical altercations between the parents placed David L. at risk.  DCFS argues that the issue is nonjusticiable because even if the court's finding was not supported by substantial evidence, the juvenile court would nonetheless maintain jurisdiction over David L. because of the two unchallenged findings under section 300, subdivision (j) pertaining to S.L.  (*In re I.A.* (2011) 201 Cal.App.4th 1484, 1491-1492.)  Astrid M. notes that even when the juvenile court would nonetheless maintain dependency jurisdiction over a child, reviewing courts reach the merits of challenges to jurisdictional findings when those findings could be prejudicial to the parent who appeals.  (See, e.g., *In re Drake M.* (2012) 211 Cal.App.4th 754, 763.)  Astrid M. argues that because she would

otherwise have been considered a nonoffending parent, this erroneous finding concerning her impacted the removal, visitation, and reunification services orders. In light of her argument, we will review Astrid M.'s appeal on the merits although dependency jurisdiction over David L. will remain in place regardless of our review. (*Ibid*.)

Section 300, subdivision (j) provides that a child is within the juvenile court's jurisdiction if the child's sibling has been abused or neglected, as defined elsewhere in section 300, and there is a substantial risk that the child will be abused or neglected. We review the juvenile court's jurisdiction and disposition findings for substantial evidence. (*In re J.K.* (2009) 174 Cal.App.4th 1426, 1433.) Substantial evidence is "evidence which is reasonable in nature, credible, and of solid value." (*Ibid*.) Under this standard of review, we examine the record in a light most favorable to the findings and conclusions of the juvenile court and defer to the lower court on issues of credibility of the evidence and witnesses. (*In re Tania S*. (1992) 5 Cal.App.4th 728, 733.) We determine only whether there is any substantial evidence, contradicted or uncontradicted, that supports the juvenile court's order, resolving all conflicts in support of the determination and indulging all legitimate inferences to uphold the lower court's ruling. (*In re John V*. (1992) 5 Cal.App.4th 1201, 1212.)

We conclude that the evidence presented at the jurisdictional hearing of the family's patterns of intermittent violence and the failure to address the root causes of the violence supported the determination that David L. was at risk. Astrid M. and S.L. had engaged in periodic domestic violence for many years, and David L.'s three older siblings had become dependent children of the juvenile court due to that violence. In 2007, the juvenile court had found true that S.L. "threatened to harm minor [David L.'s older sister A.L.] and minor's mother if mother reveals that he is the father of [A.L.] or if mother attempts to collect welfare or child support for the minor." The juvenile court had also found in another proceeding involving David L.'s older brother Cesar L. that in late 2010 Astrid M. and S.L. "engaged in a violent altercation in the child's presence. The mother threw a frying pan and pushed the father. The father pushed the mother, resulting in the mother hitting the mother's head on a step. The father kicked the mother on the

4

mother's back." The juvenile court had also found that in 2012 S.L. struck Astrid M.'s head with his fists. There were indications in the record of further violence between the parents in November 2012. All of David L.'s older siblings and his older half-sibling had been placed outside the home by the time David L. was born. S.L.'s volatile temper had even been on display in his interactions with DCFS, as when in one instance he became angry during a conversation with a social worker and warned her to end the conversation, implying that he would do something harmful if she continued to speak.

The record also reveals that the parents often denied the violence, even when incidents were witnessed by others. In the October 2012 incident, for instance, S.L. hit Astrid M. in front of several children, and on the day of the incident, Astrid M. told a neighbor and the police that S.L. had hit her. S.L. was arrested for battery on a cohabitant. The following day, however, Astrid M. denied that she had been assaulted and went to court seeking to cause the charges to be dropped. Astrid M. told DCFS that she refused to seek a restraining order against S.L. because it could have led to S.L. being sent to prison. Later, Astrid M. admitted to DCFS that she was protecting S.L. when she did not disclose that S.L. had hit her. S.L. denied that there had been any domestic violence in the October 2012 incident.

The record also indicates that despite the violence and court orders, Astrid M. may have permitted S.L. to have unsupervised contact with the children. Astrid M. denied that S.L.'s substance abuse and his mental health problems—which included S.L. hearing voices that told him to hurt himself and others—interfered with his ability to parent. DCFS concluded, "[M]other and father continue not to take ownership for their roles in their DCFS involvement. Both blamed DCFS, and did not grasp the seriousness of issues like domestic violence and substance abuse, [and] provided explanations inconsistent with what they stated during the initial investigation."

Further, Astrid M. and S.L. had a history of partial compliance with their case plans, and their compliance with court orders at the time of the September 2013 adjudication hearing was very recent. Astrid M. had enrolled in parent education and domestic violence education in January 2013, but she was dropped from the program

when she stopped attending in March 2013.  She had begun attending a domestic violence support group weekly in April 2013 and began counseling in May 2013.  S.L. had participated in 12 weeks of domestic violence counseling prior to the October 2012 incident of domestic violence but was subsequently arrested after that altercation.  S.L. had begun receiving psychiatric services in January 2013 after he reported auditory hallucinations urging him to harm himself and others, but he had attended only two appointments and missed five others.  He had been discharged from his substance abuse program in April 2013 for failure to attend, and although three appointments had been scheduled with another treatment program, he did not appear for any of them.  S.L. was scheduled to enroll in a treatment program in June 2013 but failed to do so.  He finally enrolled in an in-patient treatment program in August 2013.  Between January and August 2013, S.L. participated in drug testing only 11 of the 29 times he was asked to test.

Astrid M. and S.L., moreover, maintained what Astrid M.'s therapist described in June 2013 as "a very enmeshed and unhealthy relationship" in which S.L. was constantly present.  As of February 2013 S.L. had told DCFS that they were not living together, but DCFS concluded that this was untrue and that "they are together in spite of their denial to DCFS."  As of March and June 2013 they were openly living together again.  DCFS advised Astrid M. that "even if she were compliant with the orders of the Court, the fact that she remains involved with father (who is largely non-compliant) would negatively impact her reunification case."  Astrid M. responded that she understood this, but she remained devoted to S.L.  DCFS concluded in June 2013, when Astrid M. was pregnant with David L., that she "fails to see how her continued relationship with father negatively impacts her own reunification case.  Time and time again, mother has chosen to remain with father even though she is aware that terminating this relationship would be key to her reunification case."

The record, therefore, supports taking jurisdiction over David L. on the basis of the risk of harm posed by domestic violence:  this family had repeated instances of

6

violence, and neither parent had taken sufficient steps to ameliorate the risk of harm to children in this volatile environment.

Astrid M. argues that although there may have been domestic violence between the parents in October 2012, there was no substantial risk to David L. as of September 2013 because there had been no further incidents of violence between the parents; Astrid M. was renting a room on her own and was not living with S.L.; she was enrolled in individual therapy, parenting, and a women's support group; and she was complying with her case plan. In light of the history of the family's periodic violence and return to old patterns, Astrid M.'s argument that almost a year had passed since the last documented incident of domestic violence does not demonstrate that there was no risk of harm to David L. Three years passed between the 2007 threats of violence and the 2010 altercation, and then two years passed before S.L. struck Astrid M. with his fists. The mere passage of time does not, in light of the history of violence here, demonstrate that the risk of harm to David L. had subsided by the time of the jurisdictional hearing.

A temporary separation and separate housing for Astrid M. and S.L. at the time of the hearing in September 2013, moreover, also failed to ameliorate the risk because both parents were contemplating reuniting once S.L. was discharged from his in-patient program in November 2013. Astrid M. would not commit to remaining independent of S.L. when he left his program: when asked by DCFS if she planned to reunify with him, she responded, "I will not say yes or no, it depends if he has changed when he gets out." S.L. appeared to anticipate a reunion at some point after his completion of treatment, telling DCFS that the judge had not said that they could not be together. Astrid M.'s enrollment in individual therapy, parenting, and a support group, and her recent compliance with her case plan, while commendable, similarly did not demonstrate that the risk of harm posed by domestic violence had subsided: Astrid M. had gone through cycles of compliance before but then returned to noncompliance and her violent relationship with S.L. Substantial evidence supported the finding on this count.

## II. Removal of David L.

Section 361, subdivision (c)(1) permits removal of a child from his or her parent's custody only if the juvenile court finds by clear and convincing evidence that "[t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being" of the child if the child were returned home and "there are no reasonable means by which the [child]'s physical health can be protected without removing" the child from his or her parent's custody. "The parent need not be dangerous and the child need not have been actually harmed for removal to be appropriate. The focus of the statute is on averting harm to the child. [Citations.] In this regard, the court may consider the parent's past conduct as well as present circumstances." (*In re Cole C.* (2009) 174 Cal.App.4th 900, 917.)

Although she did not object to David L.'s removal at the disposition hearing, Astrid M. argues there was insufficient evidence David L. would be in danger if he were returned to her.[2] We review removal orders at disposition for substantial evidence,

---

[2] We reject DCFS's contention that Astrid M. forfeited her argument on appeal that removal was improper because she failed to object in the juvenile court. As DCFS explains, a reviewing court ordinarily will not consider a challenge to a procedural defect or erroneous ruling if an objection could have been but was not made in the trial court. "Dependency matters are not exempt from this rule." (*In re S.B.* (2004) 32 Cal.4th 1287, 1293; see *In re Wilford J.* (2005) 131 Cal.App.4th 742, 754 ["[t]he purpose of the forfeiture rule is to encourage parties to bring errors to the attention of the juvenile court so that they may be corrected"].) Nonetheless, it is DCFS's burden to prove removal from the physical custody of a parent is necessary to protect the child. Absent a statement by the parent clearly evidencing acquiescence in the recommendation for removal, the failure to expressly object does not relieve the juvenile court of its obligation to make appropriate evidentiary findings and apply relevant law to determine whether the case has been proved. (*In re Richard K.* (1994) 25 Cal.App.4th 580, 589; *In re Tommy E.* (1992) 7 Cal.App.4th 1234, 1237.) Nor does the parent forfeit for appellate purposes his or her right to challenge the propriety of the court's orders. (*In re M.B.* (2010) 182 Cal.App.4th 1496, 1506 ["while a parent may waive an objection to specific evidence, a claim that there is insufficient evidence to support the judgment is not waived by a failure to object"]; *In re Richard K.*, at p. 589; see generally *People v. Butler* (2003) 31 Cal.4th 1119, 1126 ["'Generally, points not urged in the trial court cannot be raised on appeal. [Citation.] The contention that a judgment is not supported

bearing in mind the clear and convincing evidence standard of proof at the juvenile court level. (*In re Kristin H.* (1996) 46 Cal.App.4th 1635, 1654.) Substantial evidence supports the removal order.

The removal order must be understood in the context of the family's history. David L. was the third child of Astrid M. and S.L. to be removed from their custody because of the ongoing domestic violence in the home and the parents' failure to address the violence or to separate from each other. Astrid M. had complied with court-ordered programs before, to the point that two of her older children were returned to her for a time. Her compliance, however, was temporary, and she was unable to reunify with those children. Domestic violence occurred periodically between the parents, and although Astrid M. had completed domestic violence counseling in 2011, she became involved in a further altercation with S.L. in 2012. Astrid M. remained "enmeshed" in an "unhealthy relationship" with S.L. and refused to rule out reunifying with him when he returned from his inpatient program. She repeatedly denied domestic violence, just as she had denied that S.L.'s substance abuse and his mental health problems interfered with his parenting. Astrid M. consistently "fail[ed] to see how her continued relationship with father negatively impacts her own reunification case," and chose to remain with S.L. despite its consequences for reunification. The domestic violence; Astrid M.'s apparent inability or unwillingness to detach from a noncompliant partner with mental illness, substance abuse problems, and a history of domestic violence; and Astrid M.'s denial and refusal to accept responsibility all rendered Astrid M. incapable of protecting David L. from domestic violence and established that David L. would suffer a substantial risk of detriment if he was returned to her care. Substantial evidence supported the juvenile court's determination.

Astrid M. makes a series of observations in support of her argument that there was no evidence of risk of detriment, none of which are persuasive. First, she argues that

---

by substantial evidence, however, is an obvious exception.'"].) Here, the record includes no statement by Astrid M. clearly evidencing acquiescence in the recommendation for removal, and therefore she has not forfeited her challenge to the removal order.

9

David L. had never been hurt in any way, but a child need not be actually harmed for removal to be appropriate. (*In re Cole C.*, *supra*, 174 Cal.App.4th at p. 917.) Next, she notes that David L. had no medical concerns at birth. Medical concerns are not present in this case, and the absence of medical concerns here is irrelevant to the basis for the finding of risk of detriment. She then observes that she had denied any domestic violence since 2012. Astrid M. may have denied domestic violence since 2012, but she also denied domestic violence at other times, and that denial contributed to the risk here because it rendered her incapable of protecting the children. To the extent that Astrid M.'s denial that there had been domestic violence in the prior 11 months may be relied upon as evidence that no violence occurred, the absence of actual violence does not mean that there was not a risk of violence nonetheless; the family's history was of intermittent violence, and of a return to violence after quiet periods and even after domestic violence counseling.

Next, Astrid M. notes that S.L. reported that he had been sober since 2012. S.L.'s history of drug testing reveals a less than 50% appearance rate for testing; and, even assuming that S.L. was not using illegal substances at the time, his mental illness and domestic violence issues remained. Astrid M. also states that she was renting a room on her own. Astrid M. may have been living apart from S.L. at the time of the removal order, but this very recent development appears to have been occasioned by S.L.'s enrollment in an inpatient program; Astrid M. was contemplating reuniting with S.L. after his program ended in two months. Because Astrid M. was unwilling to commit to ending her relationship with S.L., his temporary absence does not establish that there was no longer any risk of harm to David L. if he was in Astrid M.'s custody. Finally, Astrid M. notes that she was undergoing therapy, parenting, and a support group, and that she was positive about her therapy and willing to follow directives and court requirements. Her compliance with the case plan and her good attitude at the time of removal, while positive developments, were undermined by her persistent denial of the domestic violence and her failure to take responsibility for the role she had played, as well as by her continued relationship with S.L. Astrid M. has not established any error here.

10

### III. Failure to Return Randy L. to Astrid M.

At the six-month review hearing, "after considering the admissible and relevant evidence, the court shall order the return of the child to the physical custody of his or her parent or legal guardian unless the court finds, by a preponderance of the evidence, that the return of the child to his or her parent or legal guardian would create a substantial risk of detriment to the safety, protection, or physical or emotional well-being of the child." (§ 366.21, subd. (e).) In making its determination, the court "shall consider the efforts or progress, or both, demonstrated by the parent or legal guardian and the extent to which he or she availed himself or herself to services provided." (§ 366.21, subd. (e).)

At Randy L.'s six-month review hearing, the court found that returning him to Astrid M. would create a substantial risk of detriment to him. Specifically, the court found that "the extent of progress by the mother and father ha[d] been insufficient to return the child to them." We review findings and orders made pursuant to section 366.21 for substantial evidence (*In re Mary B.* (2013) 218 Cal.App.4th 1474, 1483) and conclude that substantial evidence supports the court's determination.[3]

Our analysis of the risk of detriment to Randy L. is very similar to the analysis of the risk of harm for David L. Astrid M. and S.L. had a long history of domestic violence and of denial of that violence; they had failed to successfully address the issue of violence or to separate from each other. While Astrid M. was participating in the services set out in her case plan at the time of the removal order, she had failed to demonstrate sufficient progress: she continued to deny that domestic violence had occurred; she denied that S.L.'s mental health problems and substance abuse interfered with his parenting; she attributed the dependency proceedings not to domestic violence

---

[3]    DCFS contends that Astrid M. waived her challenge to the order declining to return Randy L. to her care by not objecting before the juvenile court. We reject this argument because the failure to expressly object does not relieve the juvenile court of its obligation to make appropriate evidentiary findings and apply the relevant law, nor does the parent forfeit for appellate purposes his or her right to challenge the propriety of the court's orders. (*In re Richard K.*, *supra*, 25 Cal.App.4th at p. 589; *In re Tommy E.*, *supra*, 7 Cal.App.4th at p. 1237; *In re M.B.*, *supra*, 182 Cal.App.4th at p. 1506.)

and to S.L.'s drug use and mental health issues but to a "dumb thing" she had said; and she continued to be involved in an unhealthy relationship with S.L., contemplating reunifying with him when he returned from his inpatient program. All of these factors— the domestic violence; the continued relationship with S.L. despite his unresolved violence, mental illness, and substance abuse problems; and Astrid M.'s consistent denial and refusal to accept responsibility—rendered Astrid M. just as incapable of protecting Randy L. from harm as she was incapable of protecting David L., and they demonstrated that Randy L. would suffer a substantial risk of detriment if he was returned to Astrid M.'s care. Substantial evidence supported the juvenile court's determination.

**DISPOSITION**

The judgment is affirmed.

ZELON, J.

We concur:

WOODS, Acting P. J.

SEGAL, J.[*]

_____

[*]    Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

12