Filed 7/30/13; pub. order 8/22/13 (see end of opn.)

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re MARY N. B., a Person Coming Under the Juvenile Court Law. | |
| | D063372 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| | (Super. Ct. Nos. NJ013869) |
| Plaintiff and Respondent, | |
| v. | |
| ROBERT W., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County,

Michael J. Imhoff, Commissioner.  Affirmed.

Neale B. Gold, under appointment by the Court of Appeal, for Defendant and

Appellant.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County

Counsel, and Paula J. Roach, Deputy County Counsel, for Plaintiff and Respondent.

Suzanne F. Evans, under appointment by the Court of Appeal, for Minor.

Robert W. appeals an order issued at a contested six-month review hearing that resulted in his daughter, Mary, remaining in out-of-home care. He appeals, contending the juvenile court improperly (1) denied his motion for a directed verdict, (2) continued the hearing, and (3) allowed the San Diego County Health and Human Services Agency (Agency) to reopen its case-in-chief. He also asserts the evidence did not support the juvenile court's finding that returning Mary to his custody posed a risk of detriment. We reject his arguments and affirm the order.

## FACTUAL AND PROCEDURAL BACKGROUND

When Mary was born in March 2008, she tested positive for amphetamine. Mother admitted using diet pills during pregnancy. Mary was detained and remained in foster care until she was placed with Robert. In July 2009, the juvenile court terminated dependency jurisdiction after Robert obtained legal and physical custody of Mary. Mother was given supervised visitation.

According to Mother, however, Robert gave Mary back to her because there was no stipulation in the custody orders that she do anything to get Mary back. In December 2010, Robert was arrested for domestic violence after an altercation with Mother. During that incident, Robert pushed Mother against a door causing her to hit her head while she held Mary in her arms.

In November 2011, Robert was arrested again. In December 2011, the Agency filed a petition under Welfare and Institutions Code section 300, subdivision (b), alleging that the parents were residing together and that Mary had been exposed to a violent confrontation between them. (Undesignated statutory references are to the Welfare and

2

Institutions Code.) The court detained Mary in out-of-home care and ordered separate supervised visits for the parents. Following the contested jurisdiction and disposition hearing, the court found the allegations in Mary's modified petition true, placed her in foster care, ordered that the parents comply with their case plans and allowed them to have short, separate, unsupervised visits with Mary.

The parents set the six-month review hearing for trial as the recommendation was for continued out-of-home placement. At the beginning of the contested hearing on October 12, 2012, Mary's counsel requested the court proceed with the trial, but that it set argument for another date as counsel had not yet been able to speak with Mary or check on her well-being with the caregiver. (Undesignated year references are to 2012.) Robert sought return of Mary and Mother requested return or expanded visitation. At the hearing, the social worker subsequently changed her recommendation to placement with Robert as he had made substantive progress with his case plan and overnight and unsupervised visits had gone well. The social worker testified, however, that it would be detrimental to return Mary to Mother's care, but indicated a willingness to increase Mother's visits to four hours unsupervised.

Robert moved for a directed verdict, reasoning the Agency agreed that Mary should be placed with him. Explaining that the parents' issues were inseparable, the court denied the motion. Mary's counsel renewed her request for a continuance indicating she had a duty to check with Mary as to how she was doing and to review the prospect of Mary's placement with her parents. The court continued the matter for 11 days.

3

The social worker filed an addendum report recommending that Mary remain in out-of-home care and that visits be supervised. Among other things, Robert had been allowing Mother to have unauthorized overnight visits with Mary and Mary's caregiver believed that Robert's aggressive behavior was escalating. The social worker listened to a recorded phone conversation between Robert and Mother in which Robert threatened to go to Mother's home and get Mary even though Mother reminded him it was against court orders. He called Mother names and escalated to the point where he screamed something inaudible into the phone. The social worker believed that even though Robert was engaged in services, he did not appear to be demonstrating or implementing what he was learning or showing that he was changing his behavior in order to protect Mary.

At the continued hearing, the Agency moved the court to reopen its case-in-chief. The court found good cause existed and granted the Agency's motion to reopen. It also indicated it was continuing the case to provide the parents with time to respond to the evidence supporting the Agency's section 388 motion. The court found the Agency had met its threshold burden of proof regarding its section 388 motion requesting supervised visits and set the evidentiary hearing to follow the six-month review ruling.

After several continuances, the six-month review hearing concluded in early January 2013. At that hearing, the Agency withdrew its section 388 motion and the court received the additional Agency reports into evidence. The parents presented no affirmative evidence and did not cross-examine the social worker. Following argument, the court found returning Mary to either parent would create a substantial risk of detriment. Mary was continued as a dependent in out-of-home care and placed with the

4

same nonrelative extended family member. The court ordered unsupervised visits for Robert in his home only. Robert timely appealed.

DISCUSSION

I. *Procedural Issues*

At a six-month review hearing, the issue before the court is whether the child should be returned to parental custody. (§ 366.21, subd. (e); Cal. Rules of Court, rule 5.708(d).) Robert contends the juvenile court erred when it (1) denied his motion for a directed verdict, (2) continued the hearing, and (3) allowed the Agency to reopen its case-in-chief. We address each issue in turn.

A. Directed Verdict

Robert claims we must reverse the juvenile court's ruling denying his motion for a directed verdict under Code of Civil Procedure section 630 because no substantial evidence supported a finding that it would be detrimental to return Mary to him. The Agency responds that Code of Civil Procedure section 630 does not apply, that section 350 is the appropriate statute and, among other things, it would have been improper to grant the motion because the juvenile court had not yet heard from Mary's counsel. We agree with the Agency.

Under Code of Civil Procedure section 630, "[u]nless the court specified an earlier time[,] . . . after all parties have completed the presentation of all of their evidence *in a trial by jury*, any party may, without waiving his or her right to trial by jury in the event the motion is not granted, move for an order directing entry of a verdict in its favor." (Code Civ. Proc., § 630, subd. (a), italics added.) We have found no authority applying

5

Code of Civil Procedure section 630 to juvenile dependency matters where a jury is not involved. Rather, "dependency proceedings are not subject to the Code of Civil Procedure or the Civil Code unless an express provision in the Welfare and Institutions Code makes them so." (*In re Hadley B.* (2007) 148 Cal.App.4th 1041, 1049.)

In the dependency context, section 350 is similar to a motion for judgment in a court trial under Code of Civil Procedure section 631.8, and allows the juvenile court to weigh the evidence and consider the credibility of witnesses. (*In re Roberto C.* (2012) 209 Cal.App.4th 1241, 1252–1253.) Specifically, subdivision (c) of section 350 provides the following: "At any hearing in which the probation department bears the burden of proof, after the presentation of evidence on behalf of the probation department and the minor has been closed, the court, on motion of the minor, parent, or guardian, or on its own motion, shall order whatever action the law requires of it if the court, upon weighing all of the evidence then before it, finds that the burden of proof has not been met." In his reply brief, Robert concedes that section 350 is the applicable statute.

In a nutshell, Robert contends the juvenile court had no choice but to grant his motion for a "directed verdict" under section 350 because at the time he made the motion, the Agency recommended Mary's return to his custody. This is incorrect. Although the Agency recommended Mary's return, it is the duty of the juvenile court to weigh the evidence and consider the credibility of witnesses in ruling on the motion. (*In re Roberto C.*, *supra*, 209 Cal.App.4th at pp. 1252–1253.) Thus, even assuming the trial court erred in denying the motion, we would remand the matter to allow the juvenile court to rule on the motion after weighing the evidence and considering the credibility of

6

witnesses. (*Ibid.*) Dependency matters, however, are fluid in nature and circumstances must be assessed based on the facts that actually exist when the motion is renewed, rather than on the facts that existed at the time of the challenged order.

Moreover, a section 350 motion cannot be granted until the Agency and the minor have presented their evidence. (§ 350, subd. (c).) Here, minor's counsel indicated at the hearing that she had not yet had the opportunity to speak to Mary and requested a continuance to do so. Although Robert is correct that minor's counsel did not ask for a continuance to present evidence, minor's counsel had a statutory duty to interview Mary, assess her well-being, determine her wishes and advise the court of her wishes. (§ 317, subd. (e)(2).) Notably, minor's counsel may present evidence, "make recommendations to the court concerning the child's welfare, and participate further in the proceedings to the degree necessary to adequately represent the child." (§ 317, subd. (e)(1).) Here, minor's counsel sought the continuance to comply with her statutory obligation and make a recommendation to the court at closing argument. When ruling in dependency proceedings, the welfare of the minor is the paramount concern of the court. (*In re Jason L.* (1990) 222 Cal.App.3d 1206, 1214.) Under these unique circumstances, we cannot find the trial court erred in denying Robert's motion for "directed verdict" under section 350.

B. Continuance

Robert asserts the juvenile court erred when it granted the continuance requested by Mary's counsel because no good cause existed. We disagree.

Although continuances are discouraged in dependency cases (*In re Giovanni F.* (2010) 184 Cal.App.4th 594, 604), the juvenile court has discretion to grant a continuance upon a showing of good cause if it is not contrary to the best interest of the child. (§ 352, subd. (a).) We review the court's ruling on a continuance request for an abuse of discretion. (*In re Giovanni F.*, *supra*, at p. 605.)

At the start of the six-month hearing in early October, Mother's counsel requested a continuance because Mother was late. In hearing from other counsel regarding the request, Mary's counsel noted, "[M]y office has had an incredibly difficult time making contact with the caregiver and with my client. They have, over the past two months, attempted at least a dozen times to meet with Mary and get an update on Mary and have been unable to do so because of the current caregiver." Mary's counsel suggested the court proceed with trial, but that it set argument for another date to allow counsel to check on Mary. The court denied Mother's continuance request, and deferred ruling on the request of Mary's counsel. At the end of the hearing, the juvenile court continued the hearing for 11 days to allow Mary's counsel to contact Mary before closing argument.

While it is troubling that Mary's counsel was not able to meet with Mary despite repeated attempts, it appears the fault lies with the caregiver and not Mary's counsel. Again, minor's counsel is required to interview the child and may present evidence or make recommendations to the court. (§ 317, subd. (e)(1), (2).) Here, the juvenile court did not abuse its discretion in granting the brief 11-day continuance to allow Mary's counsel the time to discharge her statutory duties and make a recommendation to the court at closing argument.

C. Reopening Case-in-Chief

Robert contends the juvenile court erred in granting the Agency's request to reopen its case at the continued hearing because the Agency was not diligent in its investigation and the request unnecessarily protracted the trial.

"A request to reopen for further evidence is addressed to the discretion of the trial court whose determination is binding on appeal in the absence of palpable abuse." (*Guardianship of Phillip B.* (1983) 139 Cal.App.3d 407, 428.) Generally, the better practice is to consider all information bearing on the best interests of a child. (*Ibid.*) However, a court may consider the extent to which the trial may be protracted if the request is granted. (*Ibid.*)

Here, after the juvenile court continued the hearing from October 12 to October 23, the Agency appeared for argument with an addendum report changing its recommendation to continued out-of-home care based on "serious violations of court orders." Based on this change, the Agency sought to reopen its case. While the parents opposed the request, Mary's counsel believed that the new information justified reopening the case. After reading the October 23 addendum report, the trial court found good cause to grant the motion.

The October 23 addendum report notes that on October 16, the social worker learned from the caretaker that Robert's aggressive behavior had been escalating over the past couple of weeks. The caretaker informed the social worker "of his aggressive behavior now because she is concerned for [Mary]. She stated that she doesn't know if

9

[Robert] is able to control himself while [Mary] is in his care and is scared that [Mary] could get hurt if [Robert] becomes enraged." The caretaker stated, "[I]t has gotten to the point where she is nervous about doing visitation exchanges" with Robert and that she drops her daughter off beforehand in case he "'loses it.'"

On October 18, the social worker learned from Mother that Mary was with her during Robert's overnight visits and that Mary had spent the night with Robert only once. Mother also informed the social worker that Robert "still gets very angry and aggressive toward her," and that she did not tell the social worker about her concerns earlier because she was worried that Robert would "'ruin her socially or worse.'"

This information does not support Robert's claim that the Agency changed its recommendation based on a failure to diligently investigate the case. Rather, after the social worker prepared the October 12 addendum report, she interviewed the caretaker and Mother, with both individuals relaying information they had previously withheld based on continuing concerns regarding Robert's behavior. Based on this new information, the social worker recommended continued out-of-home care. The social worker timely presented this information in her October 23 addendum report and the relatively brief delay did not unduly protract the proceedings. Moreover, the overriding issue was ensuring Mary's physical and emotional well-being. (§ 300.2.) On this record, we cannot find that the juvenile court's decision to reopen the case constituted a palpable abuse of discretion. (*Guadalupe A. v. Superior Court* (1991) 234 Cal.App.3d 100, 106 ["When ruling in dependency proceedings, the welfare of the minor is the paramount

10

concern of the court. [Citation.] . . . Consequently, a trial court should not restrict or prevent testimony on formalistic grounds. On the contrary, the court should avail itself of all evidence which might bear on the child's best interest. [Citation.]"].)

## II. *Detriment Finding*

Robert asserts the evidence did not support the juvenile court's finding that returning Mary to his custody posed a risk of detriment.

At the six-month review hearing, the court is required to return the child to the parent's physical custody unless the Agency proves, by a preponderance of the evidence, that return would create a substantial risk of detriment to the child's physical or emotional well-being. (§ 366.21, subd. (e).) We review the evidence most favorably to the prevailing party and indulge in all legitimate and reasonable inferences to uphold the court's ruling. (*In re Misako R.* (1991) 2 Cal.App.4th 538, 545.) "The failure of the parent or legal guardian to participate regularly and make substantive progress in court-ordered treatment programs shall be prima facie evidence that return would be detrimental." (§ 366.21, subd. (e).)

In reviewing whether the record contains substantial evidence that returning Mary to Robert's custody would have been detrimental to her, we must keep in mind that the purpose of the reunification plan is "to overcome the problem that led to removal in the first place." (*Blanca P. v. Superior Court* (1996) 45 Cal.App.4th 1738, 1748.) While it is clear that Robert is making progress in alleviating the domestic violence and anger issues that led to the dependency petition, the evidence viewed most favorably to the Agency

11

supports the finding that returning Mary to Robert's care created a substantial risk of detriment.

First, Robert and Mother have a history of engaging in domestic violence in Mary's presence and failing to comply with court orders. As early as December 2011, Robert agreed that his yelling and anger affected Mary and acknowledged a need to control his anger. Since that time, Robert has participated in services, including a domestic violence course and individual therapy. Nonetheless, in October 2012, when Mary was not returned to him, Robert readily admits that he went into a "tailspin." Mary reported that Robert "'yells a lot'" and that upsets Mother. Among other things, Mother remained scared of Robert when he exhibited anger, he left angry messages with the caregiver and Mother and sought to violate a court order by texting Mother asking to see Mary or meet with her.

On November 1, Robert's therapist reported to the social worker that Robert "minimizes," "does not think he has an anger problem," and "has no clue how his anger affects others." On November 20, Robert's therapist told the social worker that Robert had a "complete attitude change" at his last session, but reported "it [was] hard to tell if he [was] putting on an act." On December 3, Mother reported that things have been "good" for the last month, but expressed concern that "down the road [Robert] will not be able to maintain his 'good behavior.'" As a result, the social worker concluded in her January 4, 2013, report that neither parent could safely parent Mary and recommended additional reunification services.

12

When the court made its detriment finding, it noted that Robert "appears to now be participating more sincerely in his therapy and his domestic violence classes," but noted that the facilitator and Robert's therapist questioned "his credibility in those pursuits." As a result, the juvenile court expressed concern that while the parents have engaged in services, it was difficult to gauge the information received from those services or point to any one specific issue. Putting the court's statements into different words, while Robert had exhibited positive change, it was too soon to say whether he had actually changed. As a result, there remained a substantial risk of harm to Mary should she be returned to Robert's care. The evidence amply supported the court's detriment finding.

## DISPOSITION

The order is affirmed.

McINTYRE, J.

WE CONCUR:

McCONNELL, P. J.

IRION, J.

13

Filed 8/22/13

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re MARY N. B., a Person Coming Under the Juvenile Court Law. | D063372 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. Nos. NJ013869) |
| v. | ORDER CERTIFYING OPINION FOR PUBLICATION |
| ROBERT W., | |
| Defendant and Appellant. | |

THE COURT:

The opinion filed July 30, 2013, is ordered certified for publication.

McINTYRE, Acting P. J.

Copies to: All parties