Filed 8/5/14  E.I. v. Super. Ct. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| E.I., | |
| Petitioner, | E060818 |
| v. | (Super.Ct.No. SWJ1200637) |
| THE SUPERIOR COURT OF RIVERSIDE COUNTY, | OPINION |
| Respondent; | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | |
| Real Party in Interest. | |

ORIGINAL PROCEEDINGS; petition for extraordinary writ.  John M. Monterosso, Judge.  Petition denied.

Charles Casey for Petitioner.

No appearance for Respondent.

1

Pamela J. Walls, County Counsel, and Anna M. Marchand, Deputy County Counsel, for Real Party in Interest.

Petitioner E.I. (mother) filed a petition for extraordinary writ pursuant to California Rules of Court, rule 8.452, challenging the juvenile court's order terminating reunification services as to her child, V.I. (the child) and setting a Welfare and Institutions Code[1] section 366.26 hearing. On July 11, 2014, this court stayed the section 366.26 hearing, pending further order. We lift the stay.

Mother now contends that the court erred in failing to continue the matter for a current home evaluation, and that it committed reversible error in concluding it would be detrimental to return the child to her custody. We deny her writ petition.

## FACTUAL AND PROCEDURAL BACKGROUND

On August 29, 2012, Riverside County Department of Public Social Services (DPSS) filed a section 300 petition on behalf of the child, who was 15 months old at the time. The petition alleged that the child came with the provisions of section 300, subdivisions (b) (failure to protect), and (g) (failure to support). The petition included the allegations that mother neglected the health and safety of the child in that their home was found to be in a deplorable condition; it was extremely cluttered, it had an infestation of cockroaches, and there was dog urine and feces smeared throughout the house. The petition also alleged that mother engaged in acts of domestic violence with the child's

---

[1] All further statutory references will be to the Welfare and Institutions Code, unless otherwise noted.

father (father)[2] in the child's presence, and that mother continued to visit father despite him making multiple death threats to her and the child. In addition, the petition alleged that mother had unresolved mental health issues, and that she abused controlled substances such as marijuana and methamphetamine.

The social worker filed a detention report, in which she reported that DPSS received several referrals regarding the child. One of the reporting parties said that mother and the child lived with the maternal great grandparents. The social worker visited the home and reported that there were cockroaches throughout, including dead ones along the floor and on the sides of the refrigerator. There were eight dogs and one cat living in the home, and the home had a pungent smell of dog feces and urine. Mother admitted using marijuana and methamphetamine.

On August 30, 2012, the juvenile court detained the child in foster care.

*Jurisdiction/Disposition*

The social worker filed a jurisdiction/disposition report on October 1, 2012, recommending that the child be declared a dependent of the court and mother be provided with reunification services.

On November 6, 2012, the social worker filed an amended section 300 petition, which deleted the domestic violence allegation and the allegation that mother specifically used methamphetamine and marijuana. At the jurisdiction hearing that same day, the

---

[2] Father is not a party to this writ. Thus, we will not discuss the allegations in the petition that concern him only.

3

court sustained the amended petition, declared the child a dependent of the court, and removed her from mother's custody. The court ordered mother to participate in reunification services. Mother's case plan required her to complete a domestic violence program, participate in general counseling, participate in a psychiatric evaluation, complete a parenting education class, and complete an outpatient substance abuse program.

*Six-month Status Review*

The social worker filed a six-month review report on April 24, 2013, recommending that the court continue mother's services. The social worker reported that mother was currently unemployed and was receiving food stamps. In February 2012, she moved to a mobile home that was being leased to own. The social worker further reported that mother completed a 10-week parenting program through MFI Recovery. On September 5, 2012, mother enrolled in an outpatient drug treatment program through MFI Recovery. The social worker consulted with mother's substance abuse counselor, who said that mother completed the program on December 10, 2012. Mother enrolled in a domestic violence program on November 2, 2012, and had attended eight group sessions and four individual counseling sessions. She had also had six sessions of individual therapy. The therapist reported that mother did not think she needed help and that she believed DPSS's involvement was completely unjustified. Mother stated that she had no problems in her life and refused to address any of the areas of concern (substance abuse, domestic violence) in her individual therapy. Thus, the social worker was

concerned that, even though mother was participating in her services, she was not benefitting from them.  The social worker opined that additional time was needed to assess mother's progress.  A Team Decision Making Meeting was held, and the group agreed that mother should begin unsupervised day visits and move toward overnight and weekend visits, once she obtained suitable housing.

The six-month review hearing was held on May 6, 2013.  The court ordered mother to participate in a psychological evaluation, and it set a contested hearing for June 4, 2013.  Mother was referred for psychological testing with Dr. Robert Suiter on May 9, 2013.  Dr. Suiter confirmed that mother's testing was scheduled for June 18, 2013.  Thus, the social worker recommended that the matter be continued for 30 days to allow mother to complete the testing.

The court held a contested hearing on June 4, 2013, and continued mother's services.

*12-month Status Review*

The social worker filed a 12-month status report on November 22, 2013, recommending that mother's services be continued.  The social worker reported that mother was still unemployed and living in the mobile home.  The social worker further reported that she received the results of mother's psychological testing on September 9, 2013, and that Dr. Suiter concluded there was no overt psychopathology.  However, Dr. Suiter said the data raised "grave concerns" regarding mother's ability to adequately care for the child, or even her interest in doing so.  Dr. Suiter opined there was no reasonable

likelihood mother would benefit from services, since she did not think there was any basis for removing the child from her care.

Mother was referred to, and started participating in, an in-home parenting education program on October 1, 2013. The program was a 22-week, in-depth class, taught by a public health nurse. The nurse reported that mother had been consistent in attending and participating, and that she was utilizing the material covered during her visits with the child.

Mother was also referred to another individual therapist on October 28, 2013, but she had not yet made contact with the therapist.

The social worker reported that mother submitted to hair follicle testing on June 18, 2013, and saliva testing on November 6, 2013, and the results were negative. She also submitted to random drug testing and tested negative twice. However, she failed to show up for random drug testing on four occasions.

As to visitation, the social worker reported that, during that reporting period, mother had unsupervised visits, twice a week for two hours. The child would usually return from visits with soaked diapers, but mother was improving on changing the child's diapers before returning her to the foster parents. The foster parents reported that the child would also return from visits with a strong cigarette smell.

On December 5, 2013, a contested 12-month review hearing was set for January 15, 2014. However, the hearing was continued several times.

On January 10, 2014, the social worker filed an addendum report and recommended that mother's services be terminated. The foster mother continued to report that the child would return from visits with soiled diapers and a strong smell of cigarette smoke. Although the social worker had addressed these issues with mother, they continued to occur. The social worker also stated that, within the last month, mother's participation in the in-home parenting class was "half-hearted." The public health nurse reported that mother had been rescheduling her appointments, and that she did not feel that mother was taking the program seriously or benefitting from it. The nurse had talked to mother about not giving the child too much junk food, not smoking around the child, and the safety/health issues of having two dogs and several puppies in her small mobile home. After 12 months of services, the social worker continued to be concerned about mother's ability to provide for the child's basic needs. Mother was still returning the child from visits with soiled diapers, and she was feeding the child too much junk food. The social worker stated that mother had not been able to demonstrate that she could implement what she had learned from her services. Thus, it was highly unlikely that an additional six months of services would be of any benefit to mother.

On February 24, 2014, the social worker filed an addendum report. Mother was discharged from the in-home parenting program on January 27, 2014, due to her poor attitude. Mother was upset the public health nurse had reported that she was half-hearted in her efforts. After discussing the issue with mother, the public health nurse discharged

7

her because she was concerned that mother would become more confrontational and not benefit from the program.

On March 18, 2014, the social worker filed another addendum report stating that DPSS received a request from Loma Linda University Children's Hospital requesting authorization to sedate the child. It was reported that, due to issues with diarrhea and symptoms related to failure to thrive, a certain procedure needed to be performed to determine the most appropriate treatment.

The court held a contested 12-month review hearing, beginning on March 21, 2014. The court heard extensive testimony from Dr. Suiter, the public health nurse, the child's foster mother, and the maternal grandmother. After reading all the reports and hearing the testimonies, the court noted that mother had still never acknowledged the basis for removal, and that, even after 18 months of services, she was indifferent to the problems identified in the home. Mother did not see the overwhelming stench of smoke and animal waste as posing serious health issues before, and there was still an overwhelming stench of animal waste and smoke in her current home. The court further noted that mother was indifferent about the child's diet. The court found that return of the child to mother's custody would create a substantial risk of detriment to the child's physical well-being. The court terminated reunification services and set a section 366.26 hearing.

8

ANALYSIS

The Court Properly Found That Return of the Child to Mother Would Create a

Substantial Risk of Detriment

Mother argues the juvenile court erred in terminating reunification services at the

12-month review hearing and contends that it should have, instead, continued the matter

for a current home evaluation.  Mother further avers that the court erred in finding that

return of the child to her custody would create a substantial risk of detriment to the

child's well-being.  Specifically, she asserts that the court based its decision not to return

the child on information that was two and one-half months old.  She points out that the

public health nurse testified at the March 21, 2014 hearing that mother's home smelled of

dog urine and smoke on January 9, 2014.  Mother further states that she completed her

case plan and learned how to safely parent the child.  We conclude the court properly

found that return of the child to mother would create a substantial risk of detriment to the

child.

At the outset, we note that mother mistakenly asserts that the court had discretion

to continue the *18-month* review hearing.  The orders that mother is now challenging

were made at the contested *12-month* review hearing, which had been continued several

times.  At the 12-month hearing, the court can terminate reunification services and

maintain the child in out-of-home placement when it finds by a preponderance of the

evidence return of the child to the offending parent would create a substantial risk of

detriment to the child's safety, protection, or physical or emotional well-being.

9

(§ 366.21, subd. (f).) The parent's failure to participate regularly and make substantive progress in court-ordered treatment programs is prima facie evidence of detriment. (*Ibid.*) In reviewing whether the record contains substantial evidence that returning the child to mother's custody would have been detrimental to her, "we must keep in mind that the purpose of the reunification plan is 'to overcome the problem that led to removal in the first place.' [Citation.]" (*In re Mary B.* (2013) 218 Cal.App.4th 1474, 1483.) "We review the evidence most favorably to the prevailing party and indulge in all legitimate and reasonable inferences to uphold the court's ruling. [Citation.]" (*Ibid.*)

Mother asserts that she completed her case plan. However, the mere completion of the technical requirements of the case plan is not the court's only consideration. (*In re Dustin R.* (1997) 54 Cal.App.4th 1131, 1141.) The court must also consider progress the parent has made in the case plan. Here, the child was removed because mother neglected her health and safety, in that their home was extremely cluttered, it had an infestation of cockroaches, and there was dog urine and feces smeared throughout the house. At the 12-month hearing, the court was properly concerned that mother never saw a problem in the home, even though there were cockroaches and the overwhelming stench of animal waste and smoke. In therapy, mother stated that she had no problems in her life, and she refused to address the areas of concern (substance abuse and domestic violence). Dr. Suiter reported that mother felt there was no reason for her daughter to be removed from her care. Therefore, he had "grave concerns" about her ability to adequately care for the

10

child. He opined that there was no reasonable likelihood she would benefit from services, since she did not think she had anything to change.

The evidence demonstrated that mother saw no need to change. The public health nurse testified that she visited mother's current home nine times, and that it smelled and was cluttered each time. The nurse said mother's mobile home was small and described it as "just a room" with a bedroom and bathroom. She specifically testified that on December 23, 2013, and January 9, 2014, the home smelled heavily of dog urine and smoke. Throughout the public health nurse's sessions with mother, she discussed the dangers of secondhand smoke, as well as her safety concerns with regard to having the dogs living in the mobile home. Mother had a female pit bull that had puppies, and the nurse was concerned that the pit bull would get protective of the puppies and bite the child. The nurse addressed her concerns with mother again on December 23, 2013, but at the next visit on January 9, 2014, the pit bull and her puppies were still in the home. Mother apparently saw no need to take corrective action.

Mother points out that the public nurse visited her home over two months prior to the 12-month hearing. Thus, she argues that the court should have continued the hearing for a current home evaluation. However, at the hearing, mother did not allege that her home had become more suitable for the child, nor did she request a continuance. In her writ, mother still does not allege that her home is suitable. In other words, she did not show good cause to grant a continuance then, nor has she alleged good cause now. (§ 352.) Moreover, we note that, although the nurse's last visit was two months prior to

11

the hearing, the maternal grandmother testified at the hearing that she was currently participating in visits with mother and the child at mother's home. The grandmother said that she and mother smoked around the child. She also testified that mother was still keeping puppies in her mobile home.

Additionally, we note that the evidence showed mother was still indifferent about the child's diet. Despite the public health nurse addressing proper nutrition with mother and advising against giving the child junk food, mother continued to do so. The maternal grandmother testified that, at a recent visit, mother fed the child, who was only three years old, chicken strips, french fries, and ice tea. At another visit, mother fed her chips, hotdogs, a king-size chocolate bar, pudding, and yogurt, even though the child was lactose intolerant.

We conclude there was substantial evidence to support the court's finding that the return of the child to mother would create a substantial risk of detriment to the safety, protection, or physical or emotional well-being of the child. Mother refused to acknowledge the reasons the child was originally removed from her care, and she failed to benefit from her reunification services. Furthermore, Dr. Suiter concluded that it would be detrimental to return the child to mother's care. The court properly terminated mother's services and set a section 366.26 hearing.

## DISPOSITION

The writ petition is denied.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

HOLLENHORST
J.

We concur:

RAMIREZ
P. J.

RICHLI
J.

13