Filed 7/16/15  In re J.C. CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re J.C., a Person Coming Under the Juvenile Court Law. | B259247 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. DK02741) |
| Plaintiff and Respondent, | |
| v. | |
| J.C., | |
| Appellant; | |
| J.O., | |
| Respondent. | |

APPEAL from and order from the Superior Court of Los Angeles County, Tony L. Richardson, Judge.  Affirmed.

Cameryn Schmidt, under appointment by the Court of Appeal, for Appellant.

Michele Anne Cella, under appointment by the Court of Appeal, for Respondent.

_____

Minor J.C. appeals from the dependency court order dismissing for insufficient evidence a child abuse petition filed against the minor's mother. We affirm because substantial evidence supports the trial court's determination.

## FACTS AND PROCEDURAL HISTORY[1]

In December 2013, acting on a child abuse petition filed by the Los Angeles County Department of Children and Family Services (the department), the dependency court detained seven-year-old J.C. and her three-year-old brother J.E. The petition alleged that mother J.O. (mother) and her male companion Giovanni G., habitually struck the children in a variety of ways: mother struck J.E. in the mouth with her finger or otherwise struck the child; Giovanni would slap J.E.'s hand, causing him to call his sister for help; Giovanni pulled J.E.'s ears and arms and slapped his back and buttocks; Giovanni slapped J.C. on the back of her head, once causing her to fall; mother would pull and scratch J.C.'s ears, leaving red marks; and mother had so physically and emotionally abused J.C. that the child talked of suicide.

J.C.'s father was L.C., while J.E.'s father was E.E. In 2009, after L.C.'s arrest for threatening mother with a knife, J.C. reported that E.E., who was then mother's boyfriend, had touched her inappropriately and placed a knife at her stomach. J.C. admitted that her father, L.C., told her to say those things and the matter was closed on the ground it was unfounded.

J.C.'s statements concerning what occurred remained fairly consistent. J.C. did not feel safe with mother or Giovanni, both of whom hit her brother, pinched and pulled their ears and slapped their heads. J.C. claimed mother did not feed her enough and kept the refrigerator door locked. She believed mother would intentionally hurt her and said she wanted to kill herself. According to J.C., mother hit J.E. daily with her hands, or a sandal or belt, and Giovanni hit both her and her brother. Mother hit her and laughed

---

[1] As is typical in dependency cases, the factual and procedural history is lengthy and detailed. We have distilled the facts where possible in order to focus on the relevant issues raised on appeal.

when she did so. J.C. claimed mother did not feed or care for her and did not show her love. However, she wanted to live with mother, but not with Giovanni, and said she wanted her parents to be together.

J.E.'s version was inconsistent. He initially said he was afraid of Giovanni, who spanked him. He did not fear mother. J.E. said he was always well fed and had clean clothes. The boy claimed that mother would sometimes hit him and that mother and Giovanni each pulled and pinched his ears. A few months later, however, the boy denied that mother hit him and said he was not afraid of her. He also denied that Giovanni ever disciplined him or otherwise applied physical force. He did not recall calling out to his sister for help. Mother was nice to J.C. and did not use physical force against the girl.

The maternal grandmother said mother did not take care of the children and that J.C. once put a knife to her own chest. Grandmother claimed that mother hit the children, and once saw Giovanni pull on J.E.'s arm and ear. L.C. denied coaching J.C. and claimed the girl had told him about the abuse.

Mother and Giovanni denied any misconduct. Giovanni never disciplined the children and mother did not do more than administer spankings on her children's buttocks from time to time. Both contended that mother's ex-husband, L.C., and mother's mother (maternal grandmother) had been coaching J.C. to lie, and that the accusations began after mother let them know she would be living with Giovanni. E.E., the father of J.E., believed J.C. was lying. J.E. never told about being hit, and instead said he loved mother and Giovanni and was attached to both of them. E.E. never saw any bruises or marks on his son. E.E. said that L.C. and maternal grandmother had coached J.C. before. He once overheard grandmother coaching J.C. to in turn coach her brother about what to say.

Several last minute reports for the court from department social workers also contained conflicting evidence. A February 2014 report stated that a social worker who interviewed J.C. did not believe the girl had been coached. An April 2014 report noted the conflicts and said forensic interviews of the parties would be conducted. The synthesized results of those interviews are included in our factual discussion, above. The

3

April report noted that marks and bruises were never found on the two minors and that J.C. had previously been coached to make false allegations. As a result, "the fact of the matter is at this time [the department] does not have enough evidence to prove or deny that the children . . . were in fact being physically abused and/or inappropriately disciplined by the mother or the mother's live-in boyfriend . . . ." Even so, the department believed the children had been exposed to some type of inappropriate behavior and continued to recommend that the court take jurisdiction.

The final report, in September 2014, noted that visits between mother and J.C. were going well. They also spoke by phone every day, and J.C. cried when the visits ended. The social worker noted that J.C. said "she likes lying even though she knows it's not good to lie." As an example, J.C. admitted that she lied about being forced to walk to school. J.C. repeated this to mother the following week. Mother reminded J.C. that they lived only a block from school and J.C. liked to walk with the other kids. J.C. laughed and said, " 'I know. I'm just lazy.' " The report added that J.C. "has also reportedly made comments about [J.E.'s father, E.E.] that [the social worker] reported does not seem like they were original thoughts. [The social worker] further reported the comments were almost like [J.C.] was told not to like the [E.E.] father or as if she had heard comments about him." The department recommended that all of the prior assessments, recommendations, and court orders stand.

No testimony was taken and no new evidence was introduced at the September 2014 jurisdiction hearing. Mother moved to dismiss the petition under Welfare and Institutions Code section 350, subdivision (c) on the ground that there was insufficient evidence to support the requested jurisdictional findings. Counsel for father E.E. and minor J.E. joined in that motion. J.C.'s counsel opposed dismissal.

The trial court observed that there were clear conflicts in the evidence, with even minor J.E. unable to corroborate his sister's account. Regardless, the boy's statement that he had been hit on his hands did not rise to the level of jurisdictionally sufficient abuse. The court ran through the evidence that J.C. might have been coached, noted she was very bright, and pointed out that J.C. did not like Giovanni and wanted her family back

4

together.  Even though J.C. was consistent about her allegations, the issue for the court was whether there was sufficient evidence to sustain the allegations of the petition.  Even though "there may be some smoke," and even after absorbing "the information and the circumstances of this family," the trial court found, "based on all the atmospherics," that there was not enough to sustain the counts alleged in the petition.  The trial court then dismissed the petition.

## DISCUSSION

The department was required to prove the allegations of its petition by a preponderance of the evidence.  (Welf. & Inst. Code, § 355, subd. (a).)  However, after the presentation of evidence is over, the court may dismiss the petition if it finds that the burden of proof was not met.  (Welf. & Inst. Code, § 350, subd. (c).)  Such a motion is akin to a motion for judgment in a bench trial (Code. Civ. Proc., § 631.8), meaning that the dependency court is the ultimate trier of fact and must weigh the evidence and assess the credibility of witnesses.  (*In re Roberto C.* (2012) 209 Cal.App.4th 1241, 1252-1253; *In re Mary B.* (2013) 218 Cal.App.4th 1474, 1479-1480.)  We will affirm if the dependency court's order is supported by substantial evidence.  (*Roberto C.,* at p. 1254.)

Minor J.C. contends that the trial court erred because:  (1)  it did not make express findings; (2) it did not weigh all the evidence in support of each allegation; (3) it improperly required corroboration by J.E.; and (4) the evidence was so strong it required the court to assume jurisdiction.

Neither Welfare and Institutions Code section 300 nor 350 requires express findings.  Accordingly, we will affirm implied findings that are supported by substantial evidence.  (*In re Ashley B.* (2011) 202 Cal.App.4th 968, 980.)

As for examining all the evidence, the court said it had reviewed "from the files the entirety of what [J.C.] has stated," had read the forensic interviews, and had read and looked at "all the evidence and the forensic interviews."  Based on that the court did not see sufficient evidence to "sustain the counts which are presented in this petition."  Thus, the record shows the court did review all the evidence and apply it to all the allegations.

5

The minor also asks us to reweigh the evidence, something we cannot do under the substantial evidence standard of review.  Viewed most favorably to the court's order, the record shows perhaps a troubled child living in a troubled household who said she likes to lie and has been coached to do so in the past to undermine mother.  This is bolstered by a January 2014 social worker's report, where the child was asked about her statements concerning suicide.  In response, the minor complained that mother was not caring for her or showing her love, acknowledged that she had made those statements, but admitted she "said that . . . because I was mad" and did not want to talk about it.  There was no evidence of bruising or marks on the children and the only other supposed victim, J.E., was inconsistent at best, sometimes claiming that nothing untoward had ever happened.

Finally, we do not believe the court required corroboration of minor' testimony.  Instead, when weighing minor's credibility, the court noted that not even her brother had supported her version of events.  We read this as nothing more than a remark underscoring the overall weakness of the minor's credibility.  On this record, we conclude there was substantial evidence to support the court's determination to dismiss the petition.

## DISPOSITION

The order dismissing the department's petition is affirmed.


                                RUBIN, J.

WE CONCUR:



        BIGELOW, P. J.



        GRIMES, J.

6