Filed 8/17/15  In re C.K. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re C.K. et al., Persons Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E061916 |
| Plaintiff and Respondent, | (Super.Ct.Nos. J252208 & J252209 & J252210) |
| v. | OPINION |
| R.S. et al., | |
| Defendants and Respondents; | |
| E.T. et al., | |
| Appellants. | |

APPEAL from the Superior Court of San Bernardino County.  Christopher B. Marshall, Judge.  Affirmed.

Hassan Gorguinpour, under appointment by the Court of Appeal, for Appellants.

Jean-Rene Basle, County Counsel, Kristina M. Robb, Deputy County Counsel for Plaintiff and Respondent.

1

No appearance for Defendants and Respondents.

The juvenile court terminated the parental rights of defendants and respondents R.S. (Mother) and R.K. (Father) to their three children, C.K., P.K., and Z.K. (collectively "the children"). (Welf. & Inst. Code, § 366.26.)[1] Prior to termination E.T., the children's paternal grandmother (Grandmother), and R.T., the children's paternal step-grandfather (Grandfather), petitioned the juvenile court for the children to be placed in Grandmother and Grandfather's (collectively "Grandparents") custody. (§ 388.) The juvenile court denied Grandparents' petition. Grandparents contend the juvenile court erred by (1) summarily denying their petition; and (2) denying their request for a continuance. We affirm the judgment.

## FACTUAL AND PROCEDURAL HISTORY

Z.K. is a female, born in 2010. P.K. is a female, born in 2011. Z.K. and P.K. have been diagnosed with seizure disorder, autism, visual impairment, speech delays, speech impairment, and developmental delays. Z.K. also suffers cardiac murmurs. P.K. is non-ambulatory; she crawls, but does not walk. C.K. is a male, born in 2013. C.K. suffers from a respiratory distress syndrome. Father is developmentally delayed. Mother suffers from mental health issues.

The children were removed from Mother's and Father's care in November 2013 when Mother and Father were arrested for the offense of willful harm or injury to a child under circumstances or conditions likely to cause great bodily harm or death (Pen.

---

[1] All subsequent statutory references will be to the Welfare and Institutions Code, unless otherwise indicated.

2

Code, § 273a, subd. (a)). The three children were initially placed in three separate foster homes. However, in April 2014, Z.K. moved in with the foster family that was already caring for P.K., so the two girls were in the same foster home. C.K. remained at a different foster family's home. Grandparents had monthly visits with the children while the children were in foster care.

In May 2014, Grandparents filed a request to change a court order. In a joint declaration attached to the request, Grandparents explained that the Department incorrectly concluded Grandparents were too elderly to care for the three children. Grandmother was 69 years old, had been diagnosed with cancer in 2010, but was in remission. Grandmother hikes and speed walks. Grandfather had recently reroofed his home, installed venting in the crawlspace underneath the home, and rebuilt the air conditioning unit. Grandparents declared they understood the children had special needs, but that Grandparents were capable of providing for those needs. Grandparents explained they had both previously cared for special needs children, and had helped to care for Z.K. and P.K. Grandparents declared they would protect the children from Mother and Father.

Grandparents requested the juvenile court order the children placed into Grandparents' custody (§ 388). Grandparents asserted the change would be better for the children because (1) the three children could live together at Grandparents' home, and (2) it was possible that, due to the children's special needs, no one will want to adopt them. The juvenile court ordered a hearing to take place on May 29, 2014

3

regarding Grandparents' request, and ordered the Department to respond prior to the hearing.

In the Department's May 22, 2014, report concerning termination of parental rights, the Department explained that all three children were adoptable, in that their respective foster parents were interested in adopting them. The report reflects the Department "ruled out" Grandparents' home as a placement option for the children "due to the special needs of the children and the extensive care they would require . . . ." The Department expressed concern about Grandmother's ability to care for the children's special needs while also attending to her own medical issues, such as her cancer that was in remission. The Department concluded the children's best interests would be served by being adopted by their respective foster parents. The Department noted the foster parents were committed to maintaining the children's contact with Grandparents.

On May 29, 2014, the Department filed a separate response to the Section 388 Petition. The response reflected that, in November 2013, Grandmother disclosed to the Department that Father's two older children were taken from Grandmother's custody, in the State of Tennessee, due to Father reporting abuse. The Department reported Grandfather was "shaky" when he picked up C.K. Grandmother was reportedly sweating and suffering loss of breath while trying to take care of all three children during a visit.

The Department explained that Grandparents might be able to care for the children at the present time, but the children had long term special needs, and Grandparents were unlikely to be able to care for the children long term, due to

Grandparents' ages and health issues. The Department also expressed concern that Grandparents minimized Father's abusive behavior, blaming only Mother for perpetrating the abuse.

At the hearing on May 29, the court said it found Grandparents presented a prima facie case for their request to change a court order (§ 388). The Court scheduled the matter for a hearing on July 28, so that Mother could be given proper notice. On July 28, the matter was continued again to September 5. On September 5, it was continued to September 17, in order for the Relative Assessment Unit to reassess or reauthorize Grandparents, given the information regarding possible abuse in Tennessee.

On September 17, the Department filed additional information with the juvenile court. A letter from the State of Tennessee Department of Children's Services (the Tennessee letter) was included with the information. The letter reflected a Tennessee CPS History Search Specialist searched the Tennessee CPS database and found: (1) a substantiated allegation of Grandparents sexually abusing two children in April 2003; (2) a substantiated allegation of Grandmother posing a substantial risk of physical injury to one child in February 2003; (3) a substantiated allegation of the Grandparents physically abusing one child in September 2002; (4) a substantiated allegation of Grandparents physically abusing two children in 2001; and (5) a substantiated allegation of Grandmother physically abusing one child in 1998.

At the hearing on September 17, Grandparents requested a continuance. Grandparents' attorney (Vega) asserted he had received the Tennessee letter that morning. Vega contacted the person who authored the Tennessee letter, Genora Wilson

(Wilson). Wilson told Vega she looked at a computer database, which contained names and "the word substantiated." Wilson did not "review the actual records." Vega explained that Grandparents asserted they were contacted only one time by the Tennessee Department of Children's Services, and that single occurrence took place in 2002.

The Department argued the court should deny Grandparents' request for a continuance. The Department asserted Grandparents were no longer approved by the Relative Assessment Unit as a placement option, due to the substantiated allegations from Tennessee, and therefore, Grandparents' request to change a court order (§ 388) had to be denied. The Department argued Grandparent's section 388 request should be denied "without further hearing based on the information from the State of Tennessee." The Department explained Grandparents would need to go through the Department's grievance process to seek approval as a placement option.

Minors' counsel (Wollard) asserted that at least one of the Tennessee allegations was accurate because Grandparents had previously admitted having children removed from them by the Tennessee Department of Children Services. Wollard explained the Relative Assessment Unit "can't approve that." Wollard asserted that, due to the children's special needs, she agreed with the Department that "[t]here is no need to go any further on [Grandparents]."

The juvenile court concluded the Relative Assessment Unit could not approve Grandparents' home as a placement option due to the one substantiated allegation that Grandparents admitted. The court explained Grandparents could seek an exemption

6

through the grievance process; however, since the matter had already been continued for three months, the court concluded a ruling needed to be made on the request to change a court order. The court denied Grandparents' requested continuance. The court found there was not a change in circumstances, and the requested change would not be in the children's best interests. The court explained the children had been with their respective caretakers "a period of time in which there is stability, there is permanence." The court found the children were likely to be adopted, and terminated Mother's and Father's parental rights.

## DISCUSSION

### A.     SUMMARY DENIAL

Grandparents contend the juvenile court erred by summarily denying their request to change a court order (§ 388).

Section 388 permits a person having an interest in a dependent child to petition the court, on the ground of a change in circumstances or new evidence, to change, modify, or set aside a court order. (§ 388, subd. (a)(1).) The juvenile court "shall order that a hearing be held" if it appears the child's best interests may be promoted by the proposed change. (§ 388, subd. (d).) The petitioner need only make a prima facie showing to trigger the right to proceed by way of a full hearing. (*In re A.S.* (2009) 180 Cal.App.4th 351, 357-358.)

In this case, the summary denial concerns a question of law: Whether a substantiated finding of child abuse in a child welfare context (as opposed to a criminal context) precludes placement with the relative who perpetrated the abuse. Section 361.4

7

provides law regarding relative placement and background checks. A dependent child may be placed in a relative's home, but if the relative is not a licensed or certified foster parent, then the county social worker must check the Child Abuse Central Index (CACI) for all adults living in the relative's home. The county social worker should also check the child abuse registries in other states, if the adults in the home have lived in other states in the preceding five years. (§ 361.4, subd. (c).)

Additionally, the county social worker must check for criminal records related to any adults living in the home. (§ 361.4, subd. (b)(1).) If the adults do not have criminal records, then the child welfare agency and the juvenile court may consider placing the child in the relative's home. If the criminal record check reveals a criminal history, then an exemption must be obtained in order for the child to be placed in the relative's home. (§ 361.4, subd. (d)(2).) "[T]he child shall not be placed in the home unless a criminal records exemption has been granted by the county." (§ 361.4, subd. (d)(2).)

The question left open by the statute is: If a relative has a substantiated child abuse finding in the child welfare context, but there is not a criminal conviction, can the child be placed in the relative's home without seeking an exemption? Grandparents, because they do not have a criminal conviction, assert there is nothing in the statute requiring them to obtain an exemption, so the juvenile court should have held the hearing. We will assume, without deciding, that Grandparents are correct—they do not

need to proceed through the exemption process because they do not have criminal records.[2]

We now consider whether the denial of the hearing was prejudicial. (Code Civ. Proc., § 475 [prejudice required for reversal]; Cal. Const., Art. VI, § 13 [miscarriage of justice required for reversal].) Out of an abundance of caution, we will apply the *Chapman* standard, and consider whether the denial of the hearing was harmless beyond a reasonable doubt. (*Chapman v. California* (1967) 386 U.S. 18, 23.)

In November 2013, Grandmother admitted Father's "older two children were taken away from her in the State of Tennessee due to his reporting of abuse." At the September 2014 hearing, Grandparents' attorney said Grandparents were contacted by the Tennessee Department of Children's Services in 2002. The Tennessee letter reflects that, in 2002, there was a substantiated finding of physical abuse to one child by Grandmother and Grandfather.

---

[2] The Department requests this court take judicial notice of the California Department of Social Services Manual for Child Welfare Services section 31-410. The Department asserts this court may take judicial notice of the manual because it is a regulation or legislative enactment. (Evid. Code, § 452, subd. (b).) We deny the request for judicial notice because the Department fails to explain how the manual constitutes a regulation or legislative enactment. (See *People v. Moore* (1997) 59 Cal.App.4th 168, 177 [burden is on the party requesting judicial notice].) Notably, the manual reflects that it contains various regulations, statutes, and court decisions, but that it is an "operational tool." While the manual may include regulations and statutes amongst its content that does not equate with the manual being a regulation or legislative enactment of which this court may take judicial notice. (Evid. Code, § 452, subd. (b).)

Grandparents' petition to change a court order includes a 12-page declaration by Grandparents. The petition and declaration do not mention the 2002 child abuse or how circumstances may have changed related to that abuse. Instead, the petition focuses on the assumption that Grandparents were denied placement of the children due to Grandparents' age. If any juvenile court learned (1) the Grandparents were denied placement by the Department due to the substantiated abuse finding (as opposed to the denial being due to their age); (2) the nature of the 2002 abuse finding, particularly the fact that it involved both Grandparents; and (3) Grandparents' petition to modify did not address this issue, then, beyond a reasonable doubt, the juvenile court would summarily deny the petition because the petition did not address the necessary issue, i.e., how the circumstances related to the abuse had changed. Grandparents' petition failed to present a prima facie case concerning the relevant issue. Therefore, we conclude the denial of the hearing was harmless beyond a reasonable doubt because any juvenile court faced with these circumstances would have also summarily denied the petition.

B.      CONTINUANCE

Grandparents contend the juvenile court erred by denying their request for a continuance because Grandparents' attorney received a copy of the Tennessee letter the morning of the hearing on the petition to modify.

Upon the request of counsel, a juvenile court may continue a hearing provided that the continuance is not contrary to the minor's interests, taking into consideration the minor's need for stability and a prompt resolution. Continuances may only be granted

10

upon a showing of good cause. (§ 352.) We review the juvenile court's ruling for an abuse of discretion. (*In re Mary N.B.* (2013) 218 Cal.App.4th 1474, 1481.)

In May, when the Department filed its response to Grandparents' petition, the Department raised the issue of abuse in Tennessee. On September 5, the hearing on Grandparents' petition was continued in order to gather more information about the abuse in Tennessee. Given that the issue of abuse was raised in May, which was more than three months before the hearing, and raised again approximately two weeks before the hearing, the trial court could reasonably find there was not good cause to continue the September 17 hearing because Grandparents should have been prepared to discuss the abuse issue on September 17. In other words, Grandparents should have been prepared to address the abuse, even if the Tennessee letter did not exist. The juvenile court could reasonably conclude that Grandparents' lack of preparation to address how the circumstances related to the abuse had changed did not constitute good cause for a continuance.

Grandparents assert they did not investigate the Tennessee abuse allegations prior to the September 17 hearing because, at the September 5 hearing, the Department said it would investigate the abuse allegations. Grandparents' argument is unpersuasive because they do not explain why, when the Department raised the abuse issue in its May response to the petition, Grandparents did not prepare themselves to address the abuse issue. In other words, Grandparents do not explain what, if anything, they did to address the abuse issue between May and September, such that good cause would exist for the continuance.

11

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER
J.

We concur:

McKINSTER
Acting P. J.

KING
J.