Filed 10/2/15  Richard V. v. Superior Court CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| RICHARD V.,<br><br>    Petitioner,<br><br>        v.<br><br>THE SUPERIOR COURT OF ORANGE COUNTY,<br><br>    Respondent;<br><br>ORANGE COUNTY SOCIAL SERVICES AGENCY et al.,<br><br>    Real Parties in Interest. | G052193<br><br>(Super. Ct. No. DP024322)<br><br>O P I N I O N |

Original proceeding; petition for a writ of mandate/prohibition to challenge an order of the Superior Court of Orange County, Craig Arthur, Judge.  Request for Stay. Petition denied.  Request denied.

Law Office of Rebecca Caption and Rebecca Caption for Petitioner.

No appearance for Respondent.

Leon J. Page, County Counsel, Karen L. Christensen and Aurelio Torre, Deputy County Counsel, for Real Party in Interest Orange County Social Services Agency.

Law Offices of Harold LaFlamme and JessAnn Hite for Real Party in Interest Anthony V., a Minor.

\*　　　　\*　　　　\*

Richard V. (father) seeks writ review (Cal. Rules of Court, rule 8.452) of the juvenile court's order setting a hearing under Welfare and Institutions Code section 366.26 (all further statutory references are to this code) after it found his two-year-old son Anthony V. (child) would be at risk in his care and that reasonable services had been offered or provided to him. Father contends substantial evidence does not support those findings. Orange County Social Services Agency (SSA) opposes the petition and the child joins in its arguments as to why the petition should be denied. We agree and deny the petition and father's request for a stay of the section 366.26 hearing, currently scheduled for October 6, 2015.

## FACTS

SSA placed a hospital hold on the child two days after his birth due to mother's mental health issues, her difficulty in bonding with the child, and her subsequent abandonment of him. Five other children belonging to mother and father were declared dependents in 2011 when mother attacked the eldest child and was arrested. A son born in 2012 was also taken into protective custody after birth and placed in foster care.

Mother has a history of excessive discipline with the children and was diagnosed with mental illness, including schizophrenia, bipolar disorder, and depression. She refused to take her prescribed medication or continue treatment and was hospitalized extensively.

Father successfully reunified with the five older children and their cases were closed in June 2013. Soon after, father allowed mother back into the home. He acknowledged she would likely create serious problems "if he is unable to concretely enforce the rule that she is not allowed in the home." He "claim[ed] that he had no choice" because of the way the exit orders were written. Mother told SSA she lived in the family home, but father and the five older children stated she lived in the camper in front of the home and visited with them daily for a few hours. SSA noted father "appears not to be capable of setting his own boundaries and limits with mother."

SSA filed a jurisdictional petition alleging failure to protect the child and abuse of siblings. The court detained the child, granted father's request for a paternity test, and ordered reunification and supervised visitation for both parents. The child was placed in the same foster home as his brother.

At the December 2013 trial on the petition, the court found the allegations true by a preponderance of the evidence, declared the child a dependent of the court, and ordered reunification services for both parents. Father was granted standing as the child's presumed father and his biological paternity was later established. `

The court approved father's case plan in February 2014. A major component of the case plan required father to "participate in individual, conjoint, family, and/or group therapy with a therapist . . . to address issues in the petition. Counseling is to continue until such time as the assigned social worker determines in consultation with the therapist that the goals of therapy have been accomplished and therapy is no longer necessary." When the social worker attempted to meet with father to discuss the case plan and offer referrals for counseling services, father indicated he was not available to

meet that month. The social worker met with father in March but did not have the correct form for father to sign. Father signed the referral for counseling in late April, but did not believe he needed it and wanted to discuss the matter with his attorney.

Father denied mother's claim she lived with him, but admitted she visited fairly regularly. From late April 2014 to mid-May, photographs of mother in father's new car and in the family home appeared almost daily on her Facebook page.

For the six-month review in June, the social worker recommended continued reunification services for the parents and the scheduling of a 12-month review hearing. The court adopted SSA's recommendation. It found reasonable services had been provided or offered and father had made moderate progress on them. And although continued supervision and out-of-home placement remained necessary, a substantial probability existed the child would be returned to his parents in the next six months.

Father reported car and medical issues relating to his knee, including surgery, which affected his ability to complete his case plan, prompting SSA to provide him with a monthly bus pass. In August 2014, father was terminated from counseling following a "third no-show."

The following month, father signed a referral for individual counseling, which the social worker submitted for processing. Father completed his "intake #1 on October 15," missed the next two sessions, which he claimed were "due to car issues," and had his first individual session on November 12.

On November 17, the therapist told the social worker that "an Assessment and Treatment Plan (ATP) [was] in the process of being completed" and that the topics that would be addressed in counseling would include "Communication, Boundaries, Healthy Family Relationships, and Taking Responsibility." Regarding father's progress, the therapist noted that father "has a lot of obstacles to prevent him from (going to his appointments)," such as transportation, his doctor appointments, limited time, and being a

4

single parent. Nevertheless, she believed "[h]e is motived[,] . . . comes on time[, and h]is reasons for not coming seem very valid."

But two days after the therapist gave the social worker her assessment, father missed another session "due to car issues" and was again terminated. Father requested immediate reinstatement to allow him "to continue with his individual counseling sessions." The social worker had father reinstated.

In its report for the 12-month review, SSA changed its recommendation to terminating reunification services and setting a section 366.26 hearing date. After being reinstated into counseling, father missed two sessions, leaving one more "no show" before the therapy sessions were again terminated. Visitation was also spotty, although some missed visits were due to father's and the children's medical appointments.

The 12-month review hearing was continued to January 2015. Visitation had improved but the social worker found it important to note father had declined an offer to make up a missed visit. The therapist reported father was participating in weekly counseling sessions, was fairly motivated to change, was "willing to talk" but was guarded and did not want to answer certain questions, and although generally positive, was sometimes irritable. She believed his physical injuries were "legit" obstacles.

Father missed a counseling session in late January and was terminated for a third time. The termination report indicated there was "'No change'" on the goal of exploring and defining "healthy family relationships and . . . boundaries." Father "reported having no concerns regarding boundaries with mother, because mother has rights to visit children." With respect to the topic of cooperation, the therapist observed father "minimized responsibility for attending sessions or reason for" SSA's involvement and threatened to sue the therapist, SSA, and the County of Orange.

The case was continued to the latter part of February. Regarding visits, the social worker again noted father had declined his offer of additional visits to make up for missed visits. Following a visit in early February, the caretaker reported the child was

5

"acting up weird," unusually crying hysterically upon waking up, and becoming aggressive with his brother and the caretaker's daughters. But father had obtained employment, was moving to another home with an address he wanted to keep confidential, and was being re-referred to counseling for the fourth time.

The court continued the matter to March. Father attended three individual counseling sessions with his new therapist. The caretaker expressed concern about the child's behavior before and after his visits with father. The child would cry during the visitation exchange and appeared to be stressed, fearful, and sad on visitation days. The caretaker also informed the social worker she suspected father may be allowing mother unauthorized contact with the child based on Facebook photographs mother posted on the days father had visits. According to the caretaker, the child did not appear happy or content in the pictures.

The court continued the case to April 6 and then again to April 13. Because the latter date coincided with the timeline for the 18-month review, the court designated it as a combined 12- and 18-month review hearing. In the report prepared for the hearing, the social worker noted father continued to visit the child but there were problems in coordinating makeup visits for missed visits.

At the combined 12- and 18-month review hearing, the social worker testified he had changed his recommendation to terminate reunification services due to the inconsistent visits and attendance in counseling. The recommendation not to return the child to father's care resulted from the social worker's concern about whether father could enforce boundaries with mother in light of the Facebook photographs the caretaker saw and the caretaker's observation of the child's behavior after visits with father. Additionally, the social worker believed father's inconsistent participation in counseling "possibly" could put the child at risk because that would mean the treatment goals of the case plan were not being addressed. The social worker had no evidence father could not enforce boundaries with mother and acknowledged mother was not in the Facebook

6

photographs of the child that were provided to him by the caretaker. The social worker did not look at mother's Facebook page and did not ask father about the pictures.

The social worker has observed aggressive and agitated behavior from father, but did not believe father needed anger management counseling. Rather, individual counseling remained father's main case plan responsibility.

The matter was trailed and subsequently continued for two months on the court's own motion. The court requested information from father's therapist and increased visitation for father. It ordered the social worker to observe the interaction between father and the child, make unannounced home visits, and investigate mother's level of involvement with the children. A few weeks later, the social worker filed an ex parte report advising of his inability to perform unannounced home visits "due to the father's threatening behavior and lack of cooperation."

In May 2015, father told his therapist he wanted to cancel counseling, as he did not want it. The therapist terminated father's counseling. Additionally, father had not visited the child since the last hearing date.

Father did not attend the review hearing in June and had not communicated with his attorney during the prior two weeks. Counsel informed the court that although father at one point had stated he was no longer going to fight for the child's return, he had changed his mind and had asked counsel to seek additional time for him to reunify with the child. The trial court denied counsel's request for a continuance to allow her time to contact father. Counsel submitted on the record.

The court found that the child would be placed at a substantial risk of detriment if returned to father. Despite clear and convincing evidence that reasonable services had been provided or offered, father's progress toward alleviating the reasons requiring placement was "minimal and in the last 60 days has been nonexistent." The court terminated reunification services and set the matter for a section 366.26 hearing.

7

DISCUSSION

*1. Failure to Return the Child to Father's Care*

Father contends SSA failed to show how the child would be at risk if placed in his care. According to him, he "participated regularly and made substantive progress on his service plan" and SSA failed to demonstrate the child would be at risk in his care. We disagree.

At an 18-month status hearing, "the court shall order the return of the child to the physical custody of his . . . parent . . . unless the court finds, by a preponderance of the evidence, that the return of the child to his . . . parent . . . would create a substantial risk of detriment to the safety, protection, or physical or emotional well-being of the child. The social worker shall have the burden of establishing that detriment. . . . The failure of the parent . . . to participate regularly and make substantive progress in court-ordered treatment programs shall be prima facie evidence that return would be detrimental." (§ 366.22, subd. (a).)

We review a juvenile court's finding of detriment for substantial evidence, viewing "the evidence most favorably to the prevailing party and indulge in all legitimate and reasonable inferences to uphold the court's ruling." (*In re Mary B.* (2013) 218 Cal.App.4th 1474, 1483.) """"Substantial evidence" is evidence of ponderable legal significance, evidence that is reasonable, credible and of solid value.'" (*Tracy J. v. Superior Court* (2012) 202 Cal.App.4th 1415, 1424.) Such evidence supports the court's finding of a substantial risk of detriment here.

Father contends he participated regularly and made substantive progress on his case plan requiring him to participate in individual counseling. Although he acknowledges being terminated from counseling when he missed three sessions, he asserts he started attending weekly sessions again after he was reinstated. He cites the therapist's report that he arrived on time, had valid reasons for missing sessions, was

8

actively participating, and was "fair[ly]" motivated to change. After being terminated from counseling a second time in January 2015, he signed a third referral and began counseling again.

The record shows father was terminated from counseling three times for nonattendance and voluntarily quit all participation after a fourth referral. Such termination and cancelation demonstrates he was not participating regularly in his case plan. Additionally, upon his third termination from counseling, the therapist's termination report identified "'No change'" in his progress with respect the case management goal to "Explore and define healthy family relationships and healthy boundaries." "'No change'" does not equate to "substantive progress." (§ 366.22, subd. (a). And, while father signed a referral to be re-referred to individual therapy again in February 2015, he attended three sessions and told his therapist he no longer wanted counseling just three months later. Moreover, with respect to "client's cooperation," the therapist reported father "had inconsistent attendance" and "minimized responsibility for attending sessions or reason for involvement of Child Protective Services" by threatening to sue SSA, the therapist, and the County of Orange. Father does not explain how this shows "substantive progress" on his court-ordered counseling. (§ 366.22, subd. (a).)

Substantial evidence demonstrates father failed to participate regularly in or make substantive progress on his court-ordered counseling. This constitute prima facie evidence that returning the child to father would create a substantial risk of detriment to the child, negating father's argument to the contrary.

## 2. Reasonable Reunification Services

Court-ordered reunification services may not be extended beyond 18 months from the date the child was removed from the parent's physical custody unless the juvenile court finds "there is a substantial probability that the child will be returned to

9

the physical custody of his or her parent . . . within the extended time period or that reasonable services have not been provided to the parent . . . . " (§ 361.5, subd. (a)(3).)

Father argues he was not offered reasonable reunification services because "[a]t the time of the six-month review, [he] had not even heard from his therapist yet to begin services" and then "was terminated from services sometime around the twelve-month review." He neglects to note he caused the initial delay when he stated he was unavailable to meet with the social worker in February 2014, when the case plan was approved. Although the social worker brought the wrong form to the next meeting, father remained reluctant to sign it even as of April because he believed he did not need counseling.

The six-month status hearing took place in June 2014 and father's first termination from counseling occurred on August 7. Father thus had four months of counseling before he was terminated for missing too many sessions. On September 23, the social worker submitted another referral for counseling. Father complains he was not reinstated until "a month and a half after" the social worker learned of the termination and claims "[t]he majority of the time father was without therapy services was the social worker's unreasonable length of time in processing referrals." We reject this argument because it was father's conduct in failing to attend his sessions that led to his terminations from counseling, and his resulting claimed lack of services.

Father faults the social worker for not referring him to additional services. But there was no need to do so because the main goal of his case plan centered on father participating in counseling.

As to father's claim that little information was provided to the court about his counseling, we conclude SSA's status reports offered sufficient detail for the court to conclude father had been offered reasonable services. Instead of following through on his counseling, he continued his pattern of nonattendance and then simply quit during his fourth referral.

10

Moreover, as this court has recognized, the "setting a section 366.26 hearing is [not] 'conditioned on a reasonable services finding' at the section 366.22 hearing covering the most recent reporting period. Subdivision (b) provides a limited right to a continuance where additional reunification services would serve the child's best interests, and the parent is making 'significant and consistent progress' in treatment programs or in establishing a safe home after release from custody. In these cases, the juvenile court may not set a section 366.26 hearing if the court finds reasonable reunification services have not been offered or provided." (*Earl L. v. Superior Court* (2011) 199 Cal.App.4th 1490, 1504.) Here, father did not make "significant and consistent" progress on his case plan.

DISPOSITION

The petition challenging the juvenile court's order setting the section 366.26 hearing is denied, as is the request to stay the hearing.

RYLAARSDAM, ACTING P. J.

WE CONCUR:

IKOLA, J.

THOMPSON, J.

11