Filed 8/12/16  In re A.M. CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re A.M., a Person Coming Under the Juvenile Court Law. | |
| CONTRA COSTA COUNTY CHILDREN AND FAMILY SERVICES BUREAU,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>A.R.,<br><br>        Defendant and Appellant. | A146350<br><br>(Contra Costa County<br>Super. Ct. Nos. J15-00407,<br>J15-00408, J15-00409)<br><br>ORDER MODIFYING OPINION AND DENYING REHEARING; NO CHANGE IN JUDGMENT |

THE COURT:

It is ordered that the opinion filed herein on July 25, 2016, be modified as follows:

On page 1, line 2, delete the digit "15" and insert "13" so that sentence reads:

Mother appeals following the jurisdictional and dispositional hearing in dependency proceedings concerning her now 13-year-old daughter and now 11-year-old twin sons.

The petition for rehearing is denied. We note briefly that the "factual matters omitted from the opinion" cited by appellant were not material, particularly in light of footnote 7. There is no change in the judgment.

Dated: _____

_____ P. J.

1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re A.M., a Person Coming Under the Juvenile Court Law. | |
| CONTRA COSTA COUNTY CHILDREN AND FAMILY SERVICES BUREAU,　　Plaintiff and Respondent,　v.　A.R.,　　Defendant and Appellant. | A146350　(Contra Costa County Super. Ct. Nos. J15-00407, J15-00408, J15-00409) |

Mother appeals following the jurisdictional and dispositional hearing in dependency proceedings concerning her now 15-year-old daughter and now 11-year-old twin sons. She contends the jurisdictional findings and removal orders are unsupported by substantial evidence. We affirm.

**Factual and Procedural Background**

In March 2015, the children were removed from their father's home following a domestic violence incident involving father and his girlfriend. Mother did not reside with father at the time and was not involved in the incident.

On April 2, 2015, the Contra Costa County Children and Family Services Bureau (bureau) filed a juvenile dependency petition pursuant to Welfare and Institutions Code[1]

_____

[1] All statutory references are to the Welfare and Institutions Code unless otherwise noted.

1

section 300, subdivision (b) alleging the children were at substantial risk of suffering serious physical harm or illness if retained in the custody of either parent. The first three counts of the petition pertain to father. With respect to mother, the petition alleges the children are at substantial risk of physical harm because mother "has a significant history of mental health and anger management problems, which resulted in the child's removal from her care." The petition was later amended to allege more specifically:

(1) "The child's mother has a significant history of mental health and anger management problems which impairs her ability to care for the child which includes: [¶] (a) The mother continuously yells and screams at the child and members of the household and hits the child resulting in the child being afraid of the mother and refusing to be in her care unsupervised. [¶] (b) The child was previously a juvenile dependent and the juvenile court ordered supervised visits by a professional agency for the mother due to the mother's inability to control what she says to the children or what she does."

(2) "The mother has a substance abuse problem which interferes with her ability to appropriately care for the child."

Following a contested detention hearing, the court rejected mother's request that the children be placed with her, leaving them in the home of their paternal aunt.

At the jurisdiction hearing on April 22, 2015, father submitted to the court's jurisdiction. The following evidence was presented with respect to the allegations involving mother.

The bureau's detention/jurisdiction report provides a history of the family's contacts with the bureau. The report states, "In November 2007, a family maintenance case was opened in San Francisco County on all three children after mother and father failed to abide by the agreements of a voluntary family maintenance plan which originated in August 2007 after the children . . . were left alone in a car for over an hour. . . . The case was . . . closed in May 2009 with legal and physical custody to father and visitation to mother. [¶] After May 2009, referrals continued to be called into Contra Costa County which alleged general neglect, physical abuse and sexual abuse. During a court hearing in family law in May 2011, mother was ordered supervised visitation only.

2

. . . [¶] After continued involvement with family law, in May 2013, the family law court ordered joint legal and physical custody of the children to mother and father. In July 2013, due to another referral to Children and Family Services, mother and father were strongly admonished to refrain from arguing, yelling, name calling, and cursing as these behaviors have an impact on their children. However, additional referrals to Children and Family Services were received."[2] The report also states that mother "has a history of arrests from 1994 through 2013 that includes offenses for disobeying court orders, DUI, assault and battery, fraud, domestic violence, willful cruelty to a child, tattooing a person under 18 yrs of age, and more." Her most recent conviction was in 2011 for misdemeanor assault and battery.

The children's counsel submitted a memorandum from a licensed clinical social worker who interviewed the children on counsel's behalf.[3] The investigator reported that daughter stated that her father and mother sometimes drink too much. She claims that both mother and father use physical discipline as punishment but described her mother's behavior as more upsetting and erratic. She told the interviewer "My mom yells and screams, and uses bad words. She also treats my grandmother really bad and fights with her all the time. I don't like this and it makes me sad because I love my grandma. When

---

[2] The court also took judicial notice of an unpublished appellate decision arising out of a ruling in the prior dependency case. Mother challenges the court's ruling arguing, "The unpublished appellate decision cannot be cited or relied upon for the truth of the recitation of what was said by others in the documents presented in that case. (See *People v. Snow* (2003) 30 Cal.4th 43, 89 n.14 [declining to take judicial notice of a prior unpublished decision regarding defendant for purposes outside that permitted by former rule 977(a)]; *Laurel Heights Improvement Assn. v. Regents of University of California* (1993) 6 Cal.4th 1112, 1123 [declining to take judicial notice of the prior unpublished decision finding it of limited relevance to the issues presented and the unpublished decision 'does not appear to come within any of the exceptions to the rule against citation of unpublished decisions.'].)" The bureau's report provides a sufficient picture of the family's dependency history. Therefore we do not rely on the facts contained in the prior decision and need not determine the admissibility of the prior opinion in this instance.

[3] In response to mother's objection, the court ruled that the children's direct statements to the social worker would be admissible, but that hearsay and lay opinions contained in the memo would not be considered.

they fight I start to shake inside." She said she wanted supervised visitation only. The interviewer also spoke with the twins. One of the sons told her "I want to stay here . . . but please ask the Judge when I can start seeing my parents again." When asked to elaborate he said "I want to have somebody around when I visit with my father and with my mother." The other son also stated that he wanted to stay in his current placement and would like to have visits with his parents "with someone around." The children said their current caretakers "treat us good and well here, and if they discipline us it is not in a harsh way like my Mom and Dad do."

Daughter testified that prior to moving to her aunt's home, she lived with her father and would visit her mother on alternating weekends. During the visits with her mother, she and her brothers watched television while her mother slept until 1:00 or 2:00 in the afternoon. When she got in trouble, her mother would start "yelling and saying bad words." The mother would scream "so loud and hard" that it scared her. Mother's yelling occurred often and it was upsetting to her. Daughter cried during her testimony because she did not like talking about her mother's anger. Her mother did not just yell when daughter was in trouble, "sometimes she just started yelling for no reason." She yelled "very, very often." When daughter gets upset, her "heart starts to hurt a lot and sometimes it freezes" and she has headaches. She gets these feelings when she is trying to wake her mother or when she gets in trouble. Her brothers were also present when the mother yells. One of them cries and the other gets mad.

Daughter testified that she does not like to visit her mother because she also yells at her grandmother and calls her names. She wanted to see her mother only in a supervised setting because her mother asks her a lot of questions when she sees her alone. Her mother hits her and her brothers with her hand or a slipper. She is sometimes scared to go to her mother's house because her mom "acts really crazy."

Daughter also testified that her mother drinks alcohol often. The last time she saw her mother drink, she drank three bottles of Corona and four or five cans of Chelada.[4] When her mother drinks she acts "weird and funny."

After the Bureau and minor's counsel rested, mother moved to have the case dismissed under section 350, subdivision (c). [5] The court denied the motion. Following the presentation of mother's evidence, which delved further into her mental health, the court sustained the counts against mother.

At the contested dispositional hearing on September 4, 2015, the bureau submitted a report prepared by social worker Christopher Johnson. In the report, Johnson expressed "concerns about [mother's] ability to provide adequate care and supervision for the children, particularly due to past child welfare concerns that included emotional abuse to the children." He reported that the "mother had a very lengthy history triangulating the children into her conflicts with their father and making allegations of . . . abuse . . . . She also had a significant history of failure to comply with visitation orders from Family Law Court by way of her refusal to return the children to their father's custody at the conclusion of her court-ordered visits." Johnson noted that "Although mother denies

---

[4] Chelada is an alcoholic drink made with beer, lime and assorted spices, sauces and peppers. Modelo Especial produces a retail Chelada that can be purchased in cans.

[5] Section 350, subdivision (c) provides: "At any hearing in which the probation department bears the burden of proof, after the presentation of evidence on behalf of the probation department and the minor has been closed, the court, on motion of the minor, parent, or guardian, or on its own motion, shall order whatever action the law requires of it if the court, upon weighing all of the evidence then before it, finds that the burden of proof has not been met. That action includes . . . the dismissal of the petition . . . . If the motion is not granted, the parent or guardian may offer evidence without first having reserved that right." Similarly, California Rules of Court, rule 5.534 provides: "(d) Meeting the burden of proof: [¶] (1) In any hearing under section 300 in which the county welfare agency has the burden of proof, the court may consider whether the burden of proof has been met only after completion of the agency's case and the presentation of any material evidence offered by the child. The court may then, on motion of any party or on the court's own motion, order whatever action the law requires if the court, based on all the evidence then before it, finds that the burden of proof has not been met."

engaging in any behaviors that are detrimental to the children's health and safety, police reports from law enforcement in Daly City and San Pablo . . . clearly indicate otherwise." According to Johnson, "Reports of the mother's erratic and dangerous behaviors were consistent with the children's claims." For example, one of the twins "reported that his mother made fraudulent calls to the police on his father despite the child's 'begging' her not to do so, particularly since father hadn't done anything wrong." The twin "also recalls that his mother attempted to crash her car into his paternal aunt during an attempted custody change after her visit, and this incident continues to trouble him despite happening approximately four years ago." He also "recalled an incident just prior to his 10th birthday when his mother did not take the children to school for three days and 'hid' them in her apartment to avoid returning them to the father's care after a visit." The children also reported their concerns about mother' alcohol abuse. One twin said that his "mother frequently drinks alcohol and behaves in a manner that frightens him afterward. He remains very concerned about the mother's frequent alcohol consumption and claims that he and his siblings 'always know' when she goes to a bar with her friends. He added that he will feel safe in mother's care when 'she doesn't drink alcohol and go out with her friends anymore.' " Daughter expressed to Johnson that her "mother behaves in a manner that frightens her after she drinks" and "reported being afraid of mother causing an automobile accident, as she has driven with the children in the vehicle after consuming alcohol. She cited mother's alcohol abuse, as well as her inability to 'control her temper' as primary reasons for feeling unsafe in the mother's care."

Based on this evidence, the court found by clear and convincing evidence that removal from parent's custody was necessary to protect the physical health and safety of the children. The court ordered regular visitation and reunification services for both parents.

Mother filed a timely notice of appeal from the court's jurisdictional and dispositional orders.

**Discussion**

## 1. Jurisdictional Order[6]

"Section 300, subdivision (b) provides a basis for juvenile court jurisdiction if the child has suffered, or there is a substantial risk the child will suffer, serious physical harm or illness caused by the parent's inability to provide regular care for the child because of the parent's mental illness, developmental disability or substance abuse. A jurisdictional finding under section 300, subdivision (b) requires: ' "(1) neglectful conduct by the parent in one of the specified forms; (2) causation; and (3) 'serious physical harm or illness' to the minor, or a 'substantial risk' of such harm or illness." [Citation.]' [Citations.] The third element 'effectively requires a showing that at the time of the jurisdictional hearing the child is at substantial risk of serious physical harm in the future . . . .' " (*In re James R.* (2009) 176 Cal.App.4th 129,135.) The bureau had the burden of proving the basis for jurisdiction by a preponderance of the evidence. (§ 355, subd. (a); *In re Henry V.* (2004) 119 Cal.App.4th 522, 528-529.) Under section 350, subdivision (c), a parent may "test the sufficiency of the Agency's evidence before presenting his or her case." (*In re Eric H.* (1997) 54 Cal. App. 4th 955, 968-969.) "In the dependency context, section 350 is similar to a motion for judgment in a court trial under Code of Civil Procedure section 631.8, and allows the juvenile court to weigh the evidence and consider the credibility of witnesses." (*In re Mary B.* (2013) 218 Cal.App.4th 1474, 1479.)

As set forth above, the court found that the children came within the meaning of section 300, subdivision (b) based on the substantial risk that the children will suffer

---

[6] The bureau argues that mother's challenge to the jurisdictional findings are moot because the unchallenged findings as to father support dependency jurisdiction pursuant to section 300, subdivision (b). (*In re Alysha S.*(1996) 51 Cal.App.4th 393, 397.) The bureau recognizes, however, that this court has discretion to consider the arguments where the jurisdictional findings could be prejudicial to the mother or potentially impact the current or future dependency proceedings. (*In re D.C.* (2011) 195 Cal.App.4th 1010, 1015.)

7

serious physical harm or illness as a result of mother's mental illness and substance abuse. Mother disputes the sufficiency of the evidence to support this finding.

The record establishes that mother drinks heavily, sleeps until the afternoon when her children are visiting, yells constantly at the children and other family members, sometimes for no reason, "acts really crazy," and that her behavior scares the children. She also has a criminal history that includes both alcohol and violence related offenses. While the record does not contain a formal diagnosis of substance abuse, none is required. (*In re Drake M*. (2012) 211 Cal.App.4th 754, 766; *In re Christopher R*. (2014) 225 Cal.App.4th 1210, 1218.) In *In re Drake M*., the court held that jurisdiction may be based on a showing that mother meets the clinical definition of substance abuse, including that she has " '[a] maladaptive pattern of substance use leading to clinically significant impairment or distress, as manifested by one (or more) of the following, occurring within a 12-month period: [¶] (1) recurrent substance use resulting in a failure to fulfill major role obligations at work, school, or home (e.g., repeated absences or poor work performance related to substance use; substance-related absences, suspensions, or expulsions from school; neglect of children or household); [¶] . . . [¶] (3) recurrent substance-related legal problems (e.g., arrests for substance-related disorderly conduct); and [¶] (4) continued substance use despite having persistent or recurrent social or interpersonal problems caused or exacerbated by the effects of the substance (e.g., arguments with spouse about consequences of intoxication, physical fights).' " (221 Cal.App.4th at p. 766; but see *In re Christopher R*., *supra*, at p. 1218 [Recognizing that while the *Drake M*. formulation was "a generally useful and workable definition of substance abuse for purposes of section 300, subdivision (b)[,] . . . it is not a comprehensive, exclusive definition mandated by either the Legislature or the Supreme Court."].) The evidence in this case undoubtedly establishes that mother meets this definition.

The record also establishes a causal link between mother's alcohol abuse and the substantial risk of physical harm to the children. Mother has a lengthy history with the bureau that has, at times, required supervised visitation and daughter's testimony

8

confirms that mother's current behavior continues to put the children at risk of serious physical injury. Daughter's testimony, which the court found credible, establishes that mother yells at them for no reason and hits the children, and that the children are afraid of being alone with her. While mother may be correct that a parent is permitted to use reasonable parental discipline, including age-appropriate spanking without his or her child becoming a dependent of the juvenile court (*In re D.M.* (2015) 242 Cal.App.4th 634, 640, citing section 300, subd. (a)), nothing in the record suggests that mother's hitting, even if only with her hand or a slipper, was either disciplinary or reasonable. Daughter did not testify that her mother spanked her when she misbehaved. Rather, after testifying that she only wanted to see her mother in a supervised setting, daughter answered her counsel's questions as follows:

"Q. Did [mother] make you afraid?

"A. Yes.

"Q. Does she hit you?

"A. Yes.

"Q. What does she hit you with?

"A. Her hand or . . . a slipper.

"Q. Does she hit your brothers?

"A. Yes."

Daughter's testimony paints a bleak picture that involves both emotional and physical abuse and amply supports jurisdiction in this case.[7]

## 2. Dispositional Order

"Before the court may order a child physically removed from his or her parent's custody, it must find, by clear and convincing evidence, the child would be at substantial risk of harm if returned home and there are no reasonable means by which the child can

---

[7] In light of this conclusion, we need not separately determine whether the bureau presented sufficient evidence that mother's "mental illness" posed a substantial risk to the children's physical health and safety.

be protected without removal. [Citations.] The jurisdictional findings are prima facie evidence the minor cannot safely remain in the home. [Citations.] The parent need not be dangerous and the minor need not have been actually harmed before removal is appropriate. The focus of the statute is on averting harm to the child." (*In re T.V.* (2013) 217 Cal.App.4th 126, 135.) "We review the court's dispositional findings for substantial evidence." (*Id*. at p. 136.)

Mother contends that "for the same reasons why the jurisdictional findings do not show that the children were at substantial risk of suffering serious physical harm by mother, the record does not show a substantial risk of detriment to the children for removal under section 361 or to deny placement with mother." For the same reasons that we have found that substantial evidence supports the jurisdictional findings, the evidence is sufficient to support the dispositional order.

## Disposition

The jurisdictional and dispositional orders are affirmed.


_____
Pollak, J.



We concur:


_____
McGuiness, P.J.


_____
Jenkins, J.