Filed 4/2/21  In re K.A. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re K.A., et al., a Person Coming Under the Juvenile Court Law. | |
| | D078028 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. No. J516600B,C) |
| v. | |
| J.G., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of San Diego County, Browder A. Willis III, Judge.  Affirmed.

Liana Serobian, under appointment by the Court of Appeal, for Defendant and Appellant J.G.

Office of County Counsel, Caitlin E. Rae, Chief Deputy County Counsel, and Emily Harlan, Deputy County Counsel, for Plaintiff and Respondent.

In this juvenile dependency proceeding, J.G. (Mother) appeals the juvenile court's orders declining to return her two daughters (K.A. and S.G.)

to her custody following a six-month review hearing held pursuant to Welfare and Institutions Code section 366.21, subdivision (e).[1] She contends the evidence did not support the court's finding that returning her children to her care posed a substantial risk of detriment to their well-being. We conclude that the court did not err in making its rulings and therefore affirm.

FACTUAL AND PROCEDURAL BACKGROUND[2]

In October 2019, the San Diego County Health and Human Services Agency (the Agency) petitioned the juvenile court under section 300, subdivisions (b) and (d) on behalf of five-year-old K.A. and under section 300, subdivision (b) on behalf of one-year-old S.G. The Agency alleged that Mother was unable to protect the children from physical harm and that K.A. had been sexually abused.

As discussed in the detention report, the children had been living with Mother and M.G., who claimed to be the biological father of S.G.[3] The Agency received a report in September 2019 that M.G. was sexually abusing K.A. When interviewed, K.A. confirmed the report of sexual abuse and also reported that her Mother and M.G. regularly engaged in physical domestic violence. Mother admitted that she and M.G. fought every day while the girls

---

[1] All further statutory references are to the Welfare and Institutions Code.

[2] "In accord with the usual rules on appeal, we state the facts in the manner most favorable to the dependency court's order." (*In re Janee W.* (2006) 140 Cal.App.4th 1444, 1448, fn. 1.)

[3] M.G. later admitted he was not S.G.'s biological father. The juvenile court proceeding involved issues surrounding M.G.'s presumed father status, but this appeal does not concern those issues or M.G.'s involvement. Similarly, the rights of the true biological father are not at issue on appeal.

were present and Mother told a social worker that she " 'wants out' " of the relationship. Working with the Agency, Mother moved to a domestic violence shelter with her daughters. The Agency recommended that the children remain with Mother while she received family maintenance services on the condition that she reside in a domestic violence shelter or another safe location.

Based on this information, the juvenile court found that the Agency had made an adequate showing that both children were persons described by section 300, subdivision (b), and ordered them detained in Mother's care.[4]

In its initial jurisdiction report, the Agency continued to recommend that the children remain in Mother's custody. However, the Agency shifted its recommendation after January 2020, when K.A. reported that Mother was challenging K.A. regarding whether she fabricated the allegations of sexual abuse by M.G. As Mother questioned the veracity of the allegations, she was also hitting K.A. with a mop and threw a shoe at her head. Mother also admitted to pinching K.A.'s ear as punishment for K.A.'s behavior that Mother believed was " 'too much.' " During this time, Mother refused to undergo drug tests on many occasions and, on other occasions, returned diluted samples, suggesting she may be masking her drug use.

The Agency was concerned about the girls' safety and removed them from Mother's care. The removal of the children triggered angry outbursts from Mother directed toward the social worker. Concerned for her personal safety, the social worker obtained a restraining order protecting her from Mother.

---

[4] The juvenile court's order does not discuss the allegation under section 300, subdivision (d) as it relates to K.A. The record on appeal does not include a transcript of this hearing.

3

At the children's jurisdiction and disposition hearing in February 2020, the juvenile court sustained the allegations of the petitions. The court ordered reunification services for Mother and placed the girls in foster care. Mother's case plan included a psychological evaluation, sexual abuse non-protective parent training, behavioral therapy, individual therapy, attendance at a domestic violence group, parent education, and random drug testing.

In advance of the six-month review hearing, the girls were placed in a foster home, but had to be moved after the foster mother told the Agency she no longer wanted to care for the girls because she was afraid of Mother. Mother was accusing the foster mother, the Agency, and the juvenile court judge of physically and sexually abusing the girls and other children. Mother continued to verbally harass the social worker and interrogated K.A. during calls regarding her belief that her daughters were being abused. The Agency and a Riverside County child abuse hotline received numerous calls, presumably from Mother, alleging that the girls' foster caregiver was abusing the children and engaging in sex trafficking.

The Agency also received reports from Mother's domestic violence shelter that Mother was acting erratically and might be under the influence of drugs. Based on her actions, another restraining order was issued against Mother on behalf of the shelter to protect its staff.[5] Mother continued to make violent threats and in April 2020 was placed under a section 5150 hold

---

[5] Staff at the domestic violence shelter explained that Mother was knocking on other residents' doors insisting that her children were inside their apartments. Mother alleged the shelter was engaged in sex trafficking of children and told one staff member that she had a gun.

in a behavioral health hospital.[6]  Mother refused to discuss this hospitalization with Dr. Katherine Ellis, the psychiatrist who performed the psychological evaluation mandated by her case plan, and failed to sign a release allowing Dr. Ellis or the social worker to speak with Mother's service providers.  In her May 2020 report, Dr. Ellis determined that Mother met the criteria for Paranoid Personality Disorder; it was unknown if Mother's symptoms (erratic behavior, paranoia, and delusional thinking) were related to drug use because she did not comply with on-demand substance use testing; Mother's symptoms were "chronic and severe"; and Mother needed to participate fully in intensive psychotherapeutic and multi-disciplinary treatment in order to "develop the skills necessary to parent safely."  In July 2020, the Agency asked the court to suspend visits between the girls and Mother.

Mother was making some progress in completing aspects of the reunification services in her case plan.  Mother agreed to a urine drug test and tested negative for drug use, but continued to refuse to submit to hair follicle testing.  Based on her erratic behavior and failure to complete her case plan, the social worker opined that "[M]other has not demonstrated that she is able to maintain her emotions and keep from being emotionally reactive in a way that is not scary to the children or causes the children to worry."  The Agency recommended that Mother continue to receive reunification services, but that the children remain dependents of the court placed in out-of-home care.

---

[6]     Pursuant to section 5150, authorities may detain a person for 72 hours in custody if there is probable cause to believe the person is a danger to others, or to himself or herself, due to a mental health disorder.

In August 2020, another social worker obtained a restraining order protecting her from Mother due to escalating verbal abuse and threats of physical violence. Undeterred, Mother contacted the police to report sexual abuse of S.G. and asked the police to set up a meeting between Mother and the social worker who had obtained a restraining order. The police officer who spoke with Mother expressed concern that Mother may be under the influence of drugs or having a mental health episode based on her strange behavior.

At the contested six-month review hearing, the Agency's reports were submitted without objection and no party asked the social worker any questions. Mother also submitted several documents without objection. After hearing argument, the juvenile court adopted the Agency's recommendations to continue foster placement for the girls and continue reunification services. The court found Mother's progress to be "adequate" and believed the children could eventually be reunified with Mother. The court also found by clear and convincing evidence that returning the children to Mother's care would create a substantial risk of detriment. The court opined that "there are clear deficiencies in [Mother's] emotional IQ level in how she responds to trauma, and that is part of the analysis that the Court has to look at because one of the things that is required is progress. And what constitutes significant progress is being able to manage that emotional—and develop and manage the emotion requirement because that's part of this case. That is going to take at the very least extending services to the twelve-month review date."

Mother appealed.

DISCUSSION

Mother contends there is insufficient evidence to support the juvenile court's finding that returning her daughters to her care would create a substantial risk of detriment to their well-being.

"At the six-month review hearing, the court is required to return the child to the parent's physical custody unless the Agency proves, by a preponderance of the evidence, that return would create a substantial risk of detriment to the child's physical or emotional well-being. (§ 366.21, subd. (e).)" (*In re Mary B.* (2013) 218 Cal.App.4th 1474, 1483 (*Mary B.*).) The juvenile court must "consider the efforts or progress, or both, demonstrated by the parent or legal guardian and the extent to which he or she availed himself or herself of services provided, taking into account the particular barriers to a [parent or guardian's] access to those court-mandated services and ability to maintain contact with his or her child." (§ 366.21, subd. (e).)

If a parent challenges the juvenile court's finding of detriment on appeal, we review the court's finding under the substantial evidence standard of review. (*Tracy J. v. Superior Court* (2012) 202 Cal.App.4th 1415, 1423-1424.) Under this standard, "[w]e review the evidence most favorably to the prevailing party and indulge in all legitimate and reasonable inferences to uphold the court's ruling." (*Mary B., supra,* 218 Cal.App.4th at p. 1483.) "In reviewing whether the record contains substantial evidence that returning [the child] to [the parent's] custody would have been detrimental to [the child], we must keep in mind that the purpose of the reunification plan is 'to overcome the problem that led to removal in the first place.'" (*Ibid.*)

Here, Mother contends that "a parent's failure to internalize what she has learned in classes cannot be the sole basis for a finding of detriment." She cites two cases to support her claim, *Georgeanne G. v. Superior Court*

7

(2020) 53 Cal.App.5th 856, 865-868 (*Georgeanne G.*) and *Blanca P. v. Superior Court* (1996) 45 Cal.App.4th 1738, 1748-1751 (*Blanca P.*), but neither case demonstrates that the court erred in this case. In *Georgeanne G.*, the court *rejected* the parent's claim that "lack of insight is not a valid ground for finding [the child's] return to [the parent's] home would create a substantial risk of detriment to [the child's] safety or physical or emotional well-being." (*Georgeanne G.*, at p. 865.) After discussing several cases, including *Blanca P.*, the court concluded that "[n]one of these cases holds a parent's lack of insight may not be considered by the juvenile court," so long as the opinions of the social workers and other professionals are " 'based on *evidence* rather than an emotional response.' " (*Georgeanne G.*, at p. 867, citing *Blanca P.*, at p. 1750.)

In this case, the juvenile court's detriment finding was not based on unreasonable inferences, or a social worker's emotional views of a parent based on speculation and conjecture. (Cf. *Georgeanne G.*, *supra*, 53 Cal.App.5th at pp. 868-869; *Blanca P.*, *supra*, 45 Cal.App.4th at pp. 1750-1751.) The Agency adequately demonstrated that Mother's actions created a substantial risk of detriment to her daughters. The children were removed from Mother's care, in part, because her anger and repeated pattern of engaging in domestic violence precluded her from protecting her children and placing their needs above her own. The evidence established that Mother had not made sufficient progress in her case plan to substantially lessen this risk, and her failure to actually change her behavior was damaging to the children. In addition to Mother's failure to gain adequate insight and her incomplete internalization of the skills included in her case plan, the court relied on Mother's failure to make significant progress in managing her

emotional response to trauma and found this failure led to a risk of harm to the girls.

There was ample support in the record for the court's decision. During the reunification period, Mother became angry with K.A. and, as a result, threw a shoe at her, hit her with a mop, and pulled her ear, causing pain and bruising. Mother's repeated emotional outbursts and threats to others disrupted her ability to obtain reunification services and interfered with her visits with her daughters. Additionally, the evidence showed that Mother's emotional reactions and paranoia often scared the girls. On at least one occasion, Mother told K.A. that she was responsible for the juvenile dependency proceeding and mistreated K.A. apparently due to her anger at a social worker. K.A.'s therapist opined that it was detrimental to children when their parents blame them for the parent's own problems and that Mother was not ready to attend joint therapy with K.A. The social worker observed K.A. to be scared during some visits with Mother and noted that K.A. often cried after being in Mother's presence due to her outbursts and anger directed at others.

As discussed by Dr. Ellis, the psychiatrist who evaluated Mother, these incidents demonstrated that Mother was still not capable of placing the girls' needs and well-being before her own and prevented her from assuming an appropriate parental role in their lives. Another therapist noted that Mother could not focus on her goals of assuming a parental role and providing a safe and secure environment for her children until she was able to regulate her own emotions. Based on this evidence, the Agency was reasonably concerned about Mother's ability to care for her children if they were returned to her care before she made additional progress in her case plan.

On appeal, Mother highlights the progress she made in completing parts of her case plan and suggests that although her abusive treatment of the social workers was "not in good [judgment]," it simply demonstrated that she was a very emotional parent that wanted to be with her children. The record reveals troubling behavior that was far more pervasive than mere lack of judgment directed toward the social workers, or a typical parental response to having their children placed in protective custody. Mother's erratic behavior, paranoia, and delusional thinking caused other residents in the domestic violence shelter to be confidentially relocated, resulted in multiple restraining orders against Mother, and required placement changes for her children. According to Dr. Ellis, Mother failed to demonstrate the necessary insight into how these dysfunctions impacted her ability to safely care for herself or her children.[7] However, even if we accept that some evidence supports Mother's position, our role on appeal is not to consider whether sufficient evidence would have supported the opposite finding. Under the substantial evidence standard of review, " ' "[w]e do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court." ' " (*In re I.J.* (2013) 56 Cal.4th 766, 773.) Based on the totality of the evidence, the juvenile court reasonably concluded that returning the girls to Mother's care would create a

---

[7] In her reply brief, Mother contends the psychological evaluation is stale and cannot support the court's detriment finding. By not objecting in the juvenile court, however, Mother waived her right to complain the evaluation is stale. (*In re Aaron B.* (1996) 46 Cal.App.4th 843, 846.) Mother also fails to identify any errors or inaccuracies in the report. The psychological evaluation was consistent with other evidence regarding Mother's troubling pattern of inappropriate behavior, negatively impacting the children's well-being. The juvenile court was entitled to find the report persuasive and give it appropriate weight.

substantial risk of detriment to their well-being. (*Mary B.*, *supra*, 218 Cal.App.4th at pp. 1483-1484 [substantial evidence supported juvenile court's detriment finding where father completed a domestic violence program but continued to yell in child's presence and child remained afraid of him].)[8]

DISPOSITION

The orders are affirmed.

GUERRERO, J.

WE CONCUR:


HALLER, Acting P. J.


AARON, J.

---

[8] In her reply brief, Mother cites authorities holding that "harm may not be presumed from the mere fact of a parent's mental illness." (*In re A.L.* (2017) 18 Cal.App.5th 1044, 1050; see also *In re James R.* (2009) 176 Cal.App.4th 129, 136 [reversing juvenile court's jurisdiction finding because "[a]lthough [mother] had a history of mental instability, she had not abused or neglected the minors in the past"].) For the reasons already discussed, there was sufficient evidence—not mere assumptions—demonstrating how the children have been harmed and are at risk of harm from Mother's outbursts and uncontrolled behavior in this case. The cited authorities do not assist Mother here.

11