Filed 8/20/21  In re W.R. CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| In re W.R. et al., Persons Coming Under the Juvenile Court Law. | B308881 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. Nos. 18LJJP00452A-C) |
| Plaintiff and Respondent, | |
| v. | |
| W.R., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Michael C. Kelley, Judge.  Affirmed.

Jacques Alexander Love, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and Jacklyn K. Louie, Principal Deputy County Counsel, for Plaintiff and Respondent.

\* \* \* \* \* \* \* \* \* \*

Father W.R. has filed six appeals from orders concerning his dependent children, including this appeal. (See *In re W.R.* (Aug. 6, 2019, B292121, B294990) [nonpub. opn.]; *In re P.R.* (Aug. 2, 2019, B293713) [nonpub. opn.]; *In re W.R.* (Aug. 20, 2020, B304013, B304856) [nonpub. opn.].) In this appeal, father challenges the orders continuing jurisdiction over his oldest son (who is now 16), and failing to return his now 10- and 11-year-old sons to his care at the six-month review hearing. While this appeal was pending, the juvenile court terminated jurisdiction over father's oldest son, and father agrees his appeal of that order is now moot. As to the younger children, we find substantial evidence supports the juvenile court's finding that it would be detrimental to return them to father, and affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

We draw many of the following facts from our earlier opinion. (See *In re W.R.*, *supra*, B304013, B304856.)

This family came to the attention of the Los Angeles County Department of Children and Family Services (Department) on June 22, 2018, after the Department received a referral of a domestic violence incident between father and his girlfriend, O.E. Father's four sons and O.E.'s daughter from a previous relationship were in the home at the time of this domestic violence incident (the youngest son is not at issue in this appeal).

Father and O.E. engaged in numerous incidents of domestic violence in front of the children. Sometimes O.E. was the aggressor, and other times father was the aggressor.

Father had diagnoses for bipolar disorder and schizophrenia. He was prescribed Seroquel, but stopped taking the medication in 2016 because it made him drowsy. Father takes Hydrocodone for injuries he received years earlier. He admitted he self-medicates

2

his mental health problems with his pain medication, and sometimes abuses his medication.

Father has sole legal and physical custody of his three older sons (the children involved in this appeal). Their mother, S.M., has not been in their lives for years. Father and S.M. also had a history of domestic violence.

The family has a history with the Department, with numerous referrals in 2010, 2013, and 2016, all related to drugs and domestic violence. Father also has an extensive criminal record, spanning from 1992 to 2016, with numerous arrests and convictions. Father has served time in prison.

On July 19, 2018, the Department filed a dependency petition with allegations under subdivisions (a) and (b) of Welfare and Institutions Code section 300, based on domestic violence between father and O.E. The petition was later amended to allege that father abused his prescription medication, and has a history of mental health problems but failed to take his psychotropic medication.

The adjudication/disposition hearing was held on August 16, 2018. The juvenile court sustained allegations under subdivision (b) of Welfare and Institutions Code section 300 based on the history of domestic violence, father's mental health, and prescription drug abuse.

The children were placed with father, under the supervision of the Department. Father was ordered to participate in family maintenance services, including random and on-demand drug testing, a full drug program if he tested positive or missed a test (for drugs other than his prescription medications at the proper dosage), a domestic violence support group, parenting classes, an Evidence Code section 730 evaluation, individual counseling, and to take all prescribed psychotropic medications.

3

The Department received reports that father and O.E. were in contact in violation of a criminal protective order. Therefore, on October 10, 2018, the Department filed a supplemental petition pursuant to Welfare and Institutions Code section 387, and the children were detained in foster care.

New concerns about the children arose. Father's oldest son was generally well behaved and respectful, but he was very nervous when answering simple questions. He also had been suspended for violent altercations with other students at school. The middle son had significant behavioral problems at school, including violent outbursts. The school had been attempting to secure services for him since 2014, but father would not consent, and was "belligerent" during conversations with school staff. The youngest child also appeared to have anger issues. Father refused to have him assessed for mental health services, and was belligerent and uncooperative with school officials. The child was sent to the principal's office daily, and was often out of control. The school stopped contacting father because he was so uncooperative and unsupportive.

The adjudication hearing on the supplemental petition was held on October 31, 2018. The juvenile court sustained the petition and removed the children from father. The court ordered father to participate in the same services previously ordered.

Father appealed the orders on the original and supplemental petitions, challenging the juvenile court's jurisdictional findings, dispositional orders, and subsequent order removing the children from his care, and we affirmed those orders on appeal. (See *In re W.R.*, *supra,* B292121, B294990.)

On October 11, 2018, father underwent an Evidence Code section 730 evaluation. Dr. Sheila Morris opined that father suffered from schizoaffective disorder, bipolar type. She was

4

concerned about his ability to care for his children, as he was not taking medications. She recommended that he receive counseling, comply with prescribed medications, take anger management and parenting classes, and submit to a follow-up evaluation in six months.

Between November 5, 2018, and January 16, 2019, father had four negative drug tests, and two positive tests for morphine. By January 2019, father had completed domestic violence, parenting, and individual counseling programs with Tarzana Treatment Center. He was not taking any psychotropic medications.

On April 3, 2019, father had his six-month psychological re-evaluation. Dr. Morris opined that father's diagnosis remained the same, but that father had improved. She recommended that father continue to receive services and treatment, but she had minimal concerns about father's ability to care for the children.

On May 1, 2019, the children were returned to father under the supervision of the Department. The court conditioned its order on father making the children available for visits with the Department, that he submit to random and on-demand drug testing, that he participate in family preservation services, and that he cooperate in getting IEP's for the children.

After father regained custody of the children, he stopped returning the Department's phone calls, and failed to submit to drug testing. He came to Department offices in June and July 2019, but he refused to provide the address where he was staying so the Department could visit him there. When the Department visited his last known address in August 2019, the social worker discovered that father had moved out six months earlier.

On September 5, 2019, the children's school contacted the Department to report that the younger boys were "in great need of

5

support services such as mental health and tutoring." They were performing poorly both academically and behaviorally. Father refused to cooperate with the school to get services for the boys. The youngest was having the most problems, walking out of class, throwing chairs, and threatening other students. Father was not responding to the school's calls. Father told the school that he would counsel the children himself.

The social worker met with the school principal on September 11, 2019. The children had attended the school for the last five years. For the last four years, father did not support his children's academic needs. He refused to consent to the children receiving mental health and tutoring services offered by the school, was disrespectful with school personnel in front of the children, and told the children not to listen to anyone but him.

The social worker met with the younger children at school, and they reported they were doing well in father's care. She also met with father when he came to pick up the children. Father was upset the social worker "violated his rights" by meeting with the children. He interrogated the children, asking what they told the social worker, and told them they should not speak to anyone outside his presence. Father walked away with the children as the social worker tried to talk to him.

Father called the social worker the next day from a blocked phone number. He refused to provide his phone number, and when the social worker asked to schedule a visit, he said he would call back. However, he never did. Therefore, the Department was concerned about the children, and recommended that they be detained. All three children were detained on October 18, 2019.

A behavioral detail report from the school reflected that between 2014 and 2019, the middle child had at least 48 disciplinary incidents, including hitting other students, refusing

to comply with directions and complete assignments, throwing rocks, disrupting class, vandalizing school property, using profanity, fighting with other students, and exposing himself to other students. Once, when the school discussed the problems with father, father recommended that they "flick" him when he misbehaved. Father also accused the school of "pick[ing] on" his kids, and threatened school staff in May 2018.

The youngest child's behavioral report detailed at least 45 disciplinary incidents between 2017 and 2019, including failing to follow directions, fighting with other students, being disruptive, throwing chairs and other objects, urinating on the floor and outside in the lunch line, damaging school property, punching other students, choking another student, screaming, running out of classrooms, and sexually harassing a female student. Father refused the school's recommendation that he receive psychological services at school. Father also refused to consent to IEP services.

On October 22, 2019, the Department filed a supplemental petition under Welfare and Institutions Code section 387, alleging that father failed to make the children available for visits by the Department, and failed to participate in drug testing and family preservation services. That same day, the Department filed a subsequent petition pursuant to section 342, alleging that father refused to cooperate with the school to obtain mental health services for his two younger boys, and that this neglect put all three sons at risk.

On October 23, 2019, the two younger boys were detained from father. His oldest son was allowed to remain in his care.

In late October and early November 2019, the Department made multiple attempts to contact father. Father refused to speak with the Department or allow the social worker to see his oldest son, who was in his care, complaining that the social worker was

7

not the one assigned to his case. Father explained that he did not sign off on the IEP for his younger son because he did not agree the boy needed all of the recommended services, such as speech therapy. However, father claimed he had "signed papers" for the youngest boy to receive counseling and mentoring services at school.

The foster mother for the younger boys reported that when they were previously in her custody, she worked tirelessly to obtain an IEP for the younger child, attending numerous meetings, but that father refused to sign the IEP.

The adjudication of the Welfare and Institutions Code section 342 and 387 petitions took place on November 14 and 22, and December 5, 2019. The juvenile court dismissed the section 387 petition without prejudice, and found the section 342 petition true as alleged.

At the December 5, 2019 disposition hearing, the court allowed the oldest child to remain in father's care, over the Department's objection.[1] The court removed the younger boys from father. The court ordered father to participate in a new Evidence Code section 730 evaluation, on-demand drug testing, parenting classes, and individual counseling.

On February 4, 2020, the attorney for the younger children filed a "walk on request" asking the court to limit father's educational rights, arguing that father was still refusing to consent to the children receiving necessary services at school. Father argued he would obtain services for his children, but only if they were returned to him, and alternatively asked that if his educational rights were limited, the Department be ordered to allow father to participate in the IEP meetings.

---

[1] The Department appealed this order, but dismissed its appeal.

8

The court expressed concern that father was not cooperating with the Department or caregivers to provide the children with necessary services, and entered an order limiting father's educational rights, vesting them in the children's foster mother. The court's order did not specify that father would be allowed to participate in meetings.

Father appealed the orders removing his younger sons, limiting father's educational rights, and requiring him to complete services he had already participated in. We affirmed. (See *In re W.R.*, *supra*, B304013, B304856.)

Father had his third Evidence Code section 730 psychological evaluation on May 12, 2020. Dr. Morris opined that father had "several noticeable regressions" since his last evaluation, including "increased grandiosity, circumstantiality and tangentiality, with delusion." Although father reported he was seeing a psychiatrist twice per month, and she had prescribed him medication, he was not taking the medication. Father's diagnosis for schizoaffective disorder remained the same, which is a lifelong condition requiring treatment. Dr. Morris believed father to be "less psychologically stable" than his last evaluation. She was concerned that father's "unmet psychiatric needs, lack of treatment, denial" are "concerning risk factors that . . . father may encounter future episodes and decompensation." She felt father has "minimal to poor parenting capacity." Dr. Morris recommended that father receive therapy at least once per week, and monthly medication monitoring. She believed that father should continue to engage in reunification services.

The younger boys were making progress in treatment to address their behavioral issues, including medication and therapy.

According to the Department's September 2020 status review report, the oldest son was "able to maintain himself" while in

father's care. He was performing well in school, and his basic needs were being met. He did not exhibit any troubling behaviors, and was not in need of mental health services.

In May 2020, the Department received a referral after father was arrested for engaging in an altercation with O.E. in the presence of his oldest son. O.E. called police, reporting that father choked her. The referral was closed as unfounded after the charges were dropped, and it was determined that no children were present during the incident. However, father was uncooperative when the Department attempted to investigate the referral.

The Department reported that father was not participating in any services recommended by Dr. Morris. The Department was concerned about the safety of the children in father's care without supervision because he was not easily redirected, and did not seem to understand their needs.

In May 2020, the younger children ran away from their placement, but returned the next day. When asked why they ran away, they reported that father told them to leave if they "don't like something."

The middle child was receiving mental health services, and was in the process of being evaluated for an IEP and for regional center services for a suspected developmental delay. These same services were initiated for the youngest child, who was also receiving counseling, and was suspected to suffer from a developmental delay.

Father progressed to unmonitored visitation with the younger children, but had to switch to unmonitored phone and video visitation because of the COVID-19 pandemic. Father would call daily, but the children did not want to speak with him because he was "mean to [them]" and their foster mother, yelling at the children and calling them derogatory names. Father also told them

10

to run away from their placement on more than one occasion. The caregiver reported that contact with father seemed to cause the children anxiety. The children reported that father also told them to misbehave in their placement. Both boys wanted to stay with their current foster mother.

The Department believed further detention was necessary because father did not believe the children needed mental health or special education services. He also continued to believe that the allegations against him were "false" and he wanted the Department to leave him alone. Father did not believe the Department was treating him fairly, and that "if he were to just take his children and move to Las Vegas all of the mess he was going through with [the Department] could be over."

On October 28, 2020, the court held a Welfare and Institutions Code section 364 review hearing (as to the oldest child), and section 366.21, subdivision (e) six-month review hearing as to the younger children. Social worker Carla Brown testified that father had completed his drug program, parenting classes, and domestic violence classes. However, father was not yet participating in weekly counseling, and was only going once or twice per month. It had been difficult to assess how well the oldest son was doing in father's care because father would not allow the Department to interview him alone, and father would often speak for him.

Father testified that he was currently taking two prescribed psychotropic medications. However, he last saw his therapist in June. He was looking for a new therapist because his last one made unprofessional comments at his last appointment.

The court found that continued jurisdiction was necessary, and that it would be detriment to return the younger children to father. This timely appeal followed.

11

## DISCUSSION

While this appeal was pending, the juvenile court terminated jurisdiction over father's oldest son. We sent a letter to the parties, asking whether father's appeal of continued jurisdiction over the child was moot, and the parties agreed it is now moot. Because jurisdiction over father's oldest son has been terminated, we need not address father's appellate challenge to that order. (*In re Michelle M.* (1992) 8 Cal.App.4th 326, 329-330.)

Concerning the younger children, father contends they would not have been in substantial danger if returned to his custody, reasoning he was taking his medication, and that the children could be protected with family maintenance services. We are not persuaded.

"At the six-month review hearing, the court is required to return the child to the parent's physical custody unless the [Department] proves, by a preponderance of the evidence, that return would create a substantial risk of detriment to the child's physical or emotional well-being. ([Welf. & Inst. Code,] § 366.21, subd. (e).) We review the evidence most favorably to the prevailing party and indulge in all legitimate and reasonable inferences to uphold the court's ruling." (*In re Mary B.* (2013) 218 Cal.App.4th 1474, 1483.)

While father was making some progress with addressing his mental health issues, it was clear that many concerns remained. Father's mental health had regressed, and the Evidence Code section 730 evaluator had serious concerns about his parenting capacity. Father demonstrated poor judgment that put his children at risk, encouraging them to run away from their placement, and to behave badly. He did not believe his children needed special education services or medication. He continued to be uncooperative with the Department, and had stopped going to therapy. On this

12

record, we find substantial evidence supports the juvenile court's order.

## DISPOSITION

The orders are affirmed.


GRIMES, Acting P. J.

WE CONCUR:


WILEY, J.


OHTA, J.*

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.